# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**    **2. PLEASE TYPE OR PRINT.**    **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| David J. Nastri, Esq. | D.Conn | Janet Bond Arterton |
| v. | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
| Katie Dykes | 7/12/2023; 8/16/2023 | 3:23-cv-00056-JBA |
| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
| | 7/12/2023; 8/28/2023 | Yes  ✓ No |

| **Attorney(s) for Appellant(s):** | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| ✓ Plaintiff<br><br>Defendant | Cameron Atkinson    122 Litchfield Road; P.O. Box 340, Harwinton, CT 06791<br>203-677-0782; catkinson@atkinsonlawfirm.com | | | | |

| **Attorney(s) for Appellee(s):** | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| Plaintiff<br><br>✓ Defendant | Blake Sullivan<br>Thadius Bochain<br>Timothy Holzman | 165 Capitol Ave, 5th FL<br>Hartford, CT 06106 | 860-808-5296<br>860-808-5020<br>860-808-5010 | blake.sullivan@ct.gov<br>thadius.bochain@ct.gov<br>timothy.holzman@ct.gov | |

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?   Yes   ✓ No |
|---|---|---|---|
| Yes | 420 | N/A | If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:        Reporter Citation: (i.e., F.3d or Fed. App.) |

*ADDENDUM "A"*: COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*: COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| U.S. a party | Diversity | ✓ Final Decision | Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ✓ Federal question (U.S. not a party) | Other (specify): _____ | Interlocutory Decision Appealable As of Right | Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**PART B: DISTRICT COURT DISPOSITION (Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| ✓ Pre-trial<br>During trial<br>After trial | Default judgment<br>✓ Dismissal/FRCP 12(b)(1)<br>lack of subj. matter juris.<br>Dismissal/FRCP 12(b)(6)<br>failure to state a claim<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>frivolous complaint<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>other dismissal<br><br>Dismissal/other jurisdiction<br>Dismissal/merit<br>Judgment / Decision of the Court<br>Summary judgment<br>Declaratory judgment<br>Jury verdict<br>Judgment NOV<br>Directed verdict<br>Other (specify): | Damages:<br>Sought: $ _____<br>Granted: $ _____<br>Denied: $ _____<br><br>✓ Injunctions:<br>✓ Preliminary<br>✓ Permanent<br>Denied |

**PART C: NATURE OF SUIT (Check as many as apply)**

| 1. Federal Statutes | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|
| Antitrust<br>Bankruptcy<br>Banks/Banking<br>✓ Civil Rights<br>Commerce,<br>Energy<br>Commodities<br>Other (specify): _____<br><br>Communications<br>Consumer Protection<br>Copyright □ Patent<br>Trademark<br>Election<br>Soc. Security<br>Environmental<br><br>Freedom of Information Act<br>Immigration<br>Labor<br>OSHA<br>Securities<br>Tax | Admiralty/<br>Maritime<br>Assault /<br>Defamation<br>FELA<br>Products Liability<br>Other (Specify): | Admiralty/<br>Maritime<br>Arbitration<br>Commercial<br>Employment<br>Insurance<br>Negotiable<br>Instruments<br>Other Specify | Civil Rights<br>Habeas Corpus<br>Mandamus<br>Parole<br>Vacate Sentence<br>Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| Forfeiture/Penalty<br>Real Property<br>Treaty (specify):<br>Other (specify): _____ | Arbitration<br>Attorney Disqualification<br>Class Action<br>Counsel Fees<br>Shareholder Derivative<br>Transfer | ✓ Yes      No<br><br>Will appeal raise a matter of first impression?<br>✓ Yes      No |

1. Is any matter relative to this appeal still pending below?     Yes, specify: _____     ✓ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)    Arises from substantially the same case or controversy as this appeal?          Yes    ✓ No

    (B)    Involves an issue that is substantially similar or related to an issue in this appeal?    Yes    ✓ No

If yes, state whether "A," or 'B," or both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: 9/12/2023 | Signature of Counsel of Record: /s/ Cameron L. Atkinson /s/ |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE:  IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

## ADDENDUM A

(1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE
NATURE OF THE ACTION;

The Plaintiff, David Nastri, brought the action below challenging a
Connecticut state parks regulation that prohibits the carrying of firearms within the
confines of state parks for any reason except hunting or other approved reasons on
the grounds that it was unconstitutional in violation of the Second Amendment
because Connecticut does not permit the carrying of firearms for self-defense in
state parks and forests.

Nastri claimed that the state parks were not "sensitive places" under existing
Second Amendment doctrine and moved for a preliminary injunction.

(2) THE RESULT BELOW;

Nastri moved for a preliminary injunction. The Defendant moved to dismiss

on the grounds that he lacked standing. The district court held a two hearing on the

preliminary injunction and the motion to dismiss after a brief period of discovery.

It ultimately dismissed Nastri's claims for lack of standing and denied his motion

for a preliminary injunction on the same basis.

Nastri subsequently moved for reconsideration based on the district court's

sua sponte ruling on a component of standing and subject matter jurisdiction that

the parties did not address. The district court denied the motion for reconsideration.

APPEAL,CLOSED,EFILE,RMS

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:23-cv-00056-JBA

Nastri v. Dykes
Assigned to: Judge Janet Bond Arterton
Referred to: Judge Robert M. Spector
Cause: 42:1983 Civil Rights Act

Date Filed: 01/14/2023
Date Terminated: 08/22/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**David J. Nastri**

represented by **Cameron Lee Atkinson**
Atkinson Law, LLC
122 Litchfield Road
P.O. Box 340
Ste. 2
Harwinton, CT 06791
203-677-0782
Email: catkinson@atkinsonlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Katie Dykes**
*in her official capacity only*

represented by **Blake Thomas Sullivan**
Office of the Attorney General
165 Capitol Ave
Ste 5th Fl
Hartford, CT 06106
860-808-5296
Fax: 860-808-5347
Email: blake.sullivan@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thadius Latimer Bochain**
Office of the Attorney General
165 Capitol Ave.
Hartford, CT 06106
860-808-5020
Fax: 860-808-5347
Email: thadius.bochain@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy J. Holzman**
State of CT, Office of the Attorney General
165 Capitol Avenue

Hartford, CT 06106
860-808-5210
Email: timothy.holzman@ct.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/14/2023 | 1 | COMPLAINT *(Verified)* against Katie Scharf Dykes ( Filing fee $402 receipt number ACTDC-7200066.), filed by David J. Nastri. (Attachments: # 1 Exhibit A - List of Connecticut State Parks, # 2 Exhibit B - Conn. Agencies Reg. 23-4-1, # 3 Exhibit C - Conn. Agencies Reg. 23-4-5, # 4 Exhibit D - DEEP FAQ About Hunting, # 5 Exhibit E - DEEP Sleeping Giant State Park Overview, # 6 Exhibit F - Sleeping Giant Park Association Overview, # 7 Exhibit G - DEEP Resources Web Page For Sleeping Giant State Park, # 8 Exhibit H - Sleeping Giant Park Association Recreational Activities, # 9 Exhibit I - DEEP Official Map of Sleeping Giant State Park, # 10 Exhibit J - DEEP List of State Parks & Forests With Recreational Activities, # 11 Exhibit K - DEEP Official Map of Naugatuck State Forest, # 12 Exhibit L - DEEP List of State Shooting Ranges, # 13 Exhibit M - Correspondence Between Nastri & DEEP, # 14 Exhibit N - Oct. 29, 2020 Legislative Research Report Adopted By DEEP)(Atkinson, Cameron) (Entered: 01/14/2023) |
| 01/14/2023 | | Request for Clerk to issue summons as to Katie Scharf Dykes. (Atkinson, Cameron) (Entered: 01/14/2023) |
| 01/14/2023 | 2 | Notice: Pursuant to Federal Rule of Civil Procedure 7.1 and Local Rule 7.1, any nongovernmental corporate party must electronically file a disclosure statement that identifies any parent corporation and any publicly held corporation owning 10% or more of its stock or states that there is no such corporation. Such disclosure statement must be filed with a party's first appearance, pleading, petition, motion, response, or other request addressed to the Court and must be supplemented if any required information changes during the case.<br>Signed by Clerk on 1/14/23.(Hushin, Z.) (Entered: 01/17/2023) |
| 01/14/2023 | | Judge Janet Bond Arterton and Judge Robert M. Spector added. (Oliver, T.) (Entered: 01/17/2023) |
| 01/14/2023 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 3/15/2023 Discovery due by 7/16/2023 Dispositive Motions due by 8/20/2023<br>Signed by Clerk on 1/14/2023.(Sichanh, Christina) (Entered: 01/17/2023) |
| 01/14/2023 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER<br>Signed by Judge Janet Bond Arterton on 1/14/2023.(Sichanh, Christina) (Entered: 01/17/2023) |
| 01/14/2023 | 5 | STANDING PROTECTIVE ORDER<br>Signed by Judge Janet Bond Arterton on 1/14/2023.(Sichanh, Christina) (Entered: 01/17/2023) |
| 01/17/2023 | 6 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES : Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 4 Electronic Filing Order, 3 Order on Pretrial Deadlines, 2 Notice re: Disclosure Statement,, 5 Protective Order, 1 Complaint, filed by David J. Nastri.<br>Signed by Clerk on 1/17/2023.(Sichanh, Christina) (Entered: 01/17/2023) |

| 01/17/2023 | 7 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Katie Dykes* with answer to complaint due within *21* days. Attorney *Cameron Lee Atkinson-Atkinson Law, LLC* *122 Litchfield Road* *P.O. Box 340 Ste. 2* *Harwinton, CT 06791*. (Sichanh, Christina) (Entered: 01/17/2023) |
|---|---|---|
| 01/17/2023 | 8 | Emergency MOTION for Preliminary Injunction *(Ex Parte Relief Not Sought)* (Responses due by 2/7/2023, ), Emergency MOTION for Temporary Restraining Order *(Ex Parte Relief Not Sought)* by David J. Nastri. (Attachments: # 1 Memorandum in Support, # 2 Supplement FRCP 65 Certification of Counsel)(Atkinson, Cameron) (Entered: 01/17/2023) |
| 01/18/2023 | | A telephonic scheduling conference will be held 1/27/23 at 3:00 p.m. as follows: 1-877-402-9753; access code 3535720. (Tooker, Aimee) (Entered: 01/18/2023) |
| 01/26/2023 | 9 | NOTICE of Appearance by Blake Thomas Sullivan on behalf of Katie Dykes (Sullivan, Blake) (Entered: 01/26/2023) |
| 01/26/2023 | 10 | NOTICE of Appearance by Timothy J. Holzman on behalf of Katie Dykes (Holzman, Timothy) (Entered: 01/26/2023) |
| 01/26/2023 | 11 | NOTICE of Appearance by Thadius Latimer Bochain on behalf of Katie Dykes (Bochain, Thadius) (Entered: 01/26/2023) |
| 01/27/2023 | 12 | Minute Entry for proceedings held before Judge Janet Bond Arterton: Telephonic Scheduling Conference held on 1/27/2023. TOTAL TIME: 52 minutes(Court Reporter Corrine Thomas.) (Sichanh, Christina) (Entered: 01/27/2023) |
| 01/28/2023 | 13 | AMENDED COMPLAINT *(Verified)* against Katie Dykes, filed by David J. Nastri. (Attachments: # 1 Exhibit A - List of Connecticut State Parks, # 2 Exhibit B - Conn. Agencies Reg. 23-4-1, # 3 Exhibit C - Conn. Agencies Reg. 23-4-5, # 4 Exhibit D - DEEP FAQ About Hunting, # 5 Exhibit E - DEEP Sleeping Giant State Park Overview, # 6 Exhibit F - Sleeping Giant Park Association Overview, # 7 Exhibit G - DEEP Resources Web Page For Sleeping Giant State Park, # 8 Exhibit H - Sleeping Giant Park Association Recreational Activities, # 9 Exhibit I - DEEP Official Map of Sleeping Giant State Park, # 10 Exhibit J - DEEP List of State Parks & Forests With Recreational Activities, # 11 Exhibit K - DEEP Official Map of Naugatuck State Forest, # 12 Exhibit L - DEEP List of State Shooting Ranges, # 13 Exhibit M - Correspondence Between Nastri & DEEP, # 14 Exhibit N - Oct. 29, 2020 Legislative Research Report Adopted By DEEP)(Atkinson, Cameron) (Entered: 01/28/2023) |
| 01/28/2023 | 14 | Emergency MOTION for Preliminary Injunction *(Amended Per 1/27/23 Colloquy With Court & Defendant)* by David J. Nastri.Responses due by 2/18/2023 (Attachments: # 1 Memorandum in Support, # 2 Supplement FRCP 65 Certification of Counsel)(Atkinson, Cameron) (Entered: 01/28/2023) |
| 01/30/2023 | 15 | SCHEDULING ORDER: Pursuant to the colloquy with counsel on the record 1/27/23, the following is ordered: 1.Plaintiff's Emergency Motion for a Temporary Restraining Order 8 is denied without prejudice in light of expedited preliminary injunction schedule; the preliminary injunction is under advisement under the schedule set forth below. 2.Plaintiff's Amended Complaint and revised Supporting Memoranda was served on 1/29/23; Defendant's opposition to the preliminary injunction is due 3/30/23 by 5:00 pm; Plaintiff's reply is due 4/14/23 by 5:00 pm. Defendant's opposition brief is not to exceed 40 pages, and the Plaintiff's response is not to exceed 14 pages. 3.The parties are directed to file a status report by 4/4/23. 4.A preliminary injunction hearing will be held from 5/1/23 to 5/4/23 from 10:00 a.m. to 3:00 p.m. daily. Signed by Judge Janet Bond Arterton on 1/27/23.(Tooker, Aimee) (Entered: 01/30/2023) |

| 01/30/2023 | 16 | Preliminary Injunction Hearing set for 5/1/2023 to 5/4/2023 10:00 AM to 3:00 PM in Courtroom Two, 141 Church St., New Haven, CT. (Tooker, Aimee) (Entered: 01/30/2023) |
|---|---|---|
| 02/11/2023 | 17 | SUMMONS Returned Executed by David J. Nastri. Katie Dykes served on 1/31/2023, answer due 2/21/2023. (Atkinson, Cameron) (Entered: 02/11/2023) |
| 02/15/2023 | 18 | Consent MOTION for Extension of Time until March 30, 2023 to respond to Plaintiff's Amended Complaint by Katie Dykes. (Holzman, Timothy) (Entered: 02/15/2023) |
| 02/22/2023 | 19 | ORDER granting Consent MOTION for Extension of Time until March 30, 2023 to respond to Plaintiff's Amended Complaint. Signed by Judge Janet Bond Arterton on 2/22/23. (Tooker, Aimee) (Entered: 02/22/2023) |
| 02/22/2023 | | Answer deadline updated for All Defendants. (Tooker, Aimee) (Entered: 02/22/2023) |
| 03/09/2023 | 20 | First MOTION for Leave to File Excess Pages by Katie Dykes. (Sullivan, Blake) (Entered: 03/09/2023) |
| 03/14/2023 | 21 | ORDER granting 20 Motion for Leave to File Excess Pages, without objection, not to exceed 55 pages. Signed by Judge Janet Bond Arterton on 3/14/23. (Tooker, Aimee) (Entered: 03/14/2023) |
| 03/30/2023 | 22 | MOTION to Dismiss for Lack of Jurisdiction *Amended Complaint 13* by Katie Dykes.Responses due by 4/20/2023 (Attachments: # 1 Memorandum in Support) (Holzman, Timothy) (Entered: 03/30/2023) |
| 03/30/2023 | 23 | Memorandum in Opposition re 14 Emergency MOTION for Preliminary Injunction *(Amended Per 1/27/23 Colloquy With Court & Defendant)* filed by Katie Dykes. (Attachments: # 1 Exhibit List, # 2 Exhibit Excerpt List, # 3 Affidavit Declaration of AAG Timothy Holzman, # 4 Exhibit 1-49 (Ordinances and Laws About Parks), # 5 Exhibit 50-70 (Ordinances and Laws About Parks), # 6 Exhibit 71-76 (Laws Addressing Hunting), # 7 Exhibit 77-103 (Laws Addressing Sensitive Places), # 8 Exhibit 104-117 (D.E.E.P.), # 9 Exhibit 118-124 (University Regulations), # 10 Exhibit 125-129 (Militias and Parades), # 11 Exhibit 130-132 (Additional), # 12 Affidavit Expert Prof. Leah Glaser, # 13 Affidavit Expert Prof. Terence Young, # 14 Affidavit Expert Prof. Saul Cornell, # 15 Affidavit DEEP Col. Lewis, # 16 Affidavit DEEP Thomas Tyler, # 17 Affidavit DECD CMO Anthony Anthony, # 18 Affidavit Superintendent Gary Highsmith_Hamden, # 19 Affidavit Superintendent Mark Benigni_Meriden, # 20 Supplement Secondary Sources, # 21 Supplement Unreported Decisions)(Bochain, Thadius) (Entered: 03/30/2023) |
| 04/03/2023 | 24 | EXHIBIT *CORRECTED 23-4: Exhibit 1-49 (Ordinances and Laws About Parks)* by Katie Dykes re 23 Memorandum in Opposition to Motion,,,,,. (Attachments: # 1 Exhibit CORRECTED 23-6: Exhibit 71-76 (Laws Addressing Hunting), # 2 Exhibit CORRECTED 23-7: Exhibit 77-103 (Laws Addressing Sensitive Places), # 3 Exhibit CORRECTED 23-8: Exhibit 104-117 (D.E.E.P.))(Bochain, Thadius) (Entered: 04/03/2023) |
| 04/04/2023 | 25 | Joint STATUS REPORT by David J. Nastri. (Atkinson, Cameron) (Entered: 04/04/2023) |
| 04/10/2023 | | A telephonic status conference will be held 4/26/23 at 4:00 p.m. as follows: 1-877-402-9753; access code 3535720. (Tooker, Aimee) (Entered: 04/10/2023) |
| 04/14/2023 | 26 | NOTICE OF E-FILED CALENDAR: Preliminary Injunction Hearing is rescheduled to begin May 8, 2023 10:00 a.m., Courtroom Two, 141 Church Street, New Haven, CT. The parties are directed to confer and establish the availability of live witnesses, anticipated testimony length and other issues relevant to the efficient presentation of live testimony prior to the April 26, 2023 telephonic status conference. (Tooker, Aimee) (Entered: 04/14/2023) |

| 04/14/2023 | 27 | Memorandum in Opposition *(Oral Argument Not Requested)* re 22 MOTION to Dismiss for Lack of Jurisdiction *Amended Complaint 13* filed by David J. Nastri. (Atkinson, Cameron) (Entered: 04/14/2023) |
|---|---|---|
| 04/14/2023 | 28 | REPLY to Response to 14 Emergency MOTION for Preliminary Injunction *(Amended Per 1/27/23 Colloquy With Court & Defendant)* filed by David J. Nastri. (Atkinson, Cameron) (Entered: 04/14/2023) |
| 04/26/2023 | 29 | Minute Entry for proceedings held before Judge Janet Bond Arterton: Telephonic Status Conference held on 4/26/2023. TOTAL TIME: 19 minutes(Court Reporter Corrine Thomas.) (Sichanh, Christina) (Entered: 04/26/2023) |
| 04/28/2023 | 30 | MOTION for Extension of Time until May 3, 2023 for Defendant to Reply to Plaintiff's 27 Memorandum in Opposition to Motion by Katie Dykes. (Sullivan, Blake) (Entered: 04/28/2023) |
| 04/28/2023 | 31 | ORDER granting on consent 30 Motion for Extension of Time until May 3, 2023 for Defendant to Reply to Plaintiff's 27 Memorandum in Opposition to Motion to Defendant's Motion to Dismiss. Defendant's Reply shall be filed by 5pm on May 3, 2023. Signed by Judge Janet Bond Arterton on 4/28/2023. (Anderson, Colleen) (Entered: 04/28/2023) |
| 04/28/2023 | 32 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Preliminary injunction hearing will be held 5/9/23 and 5/10/23; 10:00 a.m. - 3:00 p.m. in Courtroom Two, 141 Church Street, New Haven, CT. (Tooker, Aimee) (Entered: 04/28/2023) |
| 05/03/2023 | 33 | RESPONSE re 27 Memorandum in Opposition to Motion *to Dismiss* filed by Katie Dykes. (Attachments: # 1 Exhibit A - Deposition of David J. Nastri Transcript, # 2 Exhibit B - Unreported Cases)(Sullivan, Blake) (Entered: 05/03/2023) |
| 05/08/2023 | 34 | Proposed Exhibit List by Katie Dykes. (Sullivan, Blake) (Entered: 05/08/2023) |
| 05/08/2023 | 35 | Joint STIPULATION *Of Facts For Purposes Of Preliminary Injunction Hearing Only* by David J. Nastri. (Atkinson, Cameron) (Entered: 05/08/2023) |
| 05/09/2023 | 36 | EXHIBIT *Defendant's Ex. 144 - Transcription of Ex. 143 taken from digital archive* by Katie Dykes. (Sullivan, Blake) (Entered: 05/09/2023) |
| 05/09/2023 | 38 | Minute Entry. Proceedings held before Judge Janet Bond Arterton: Preliminary Injunction Hearing held on 5/9/2023 re 8 Emergency MOTION for Preliminary Injunction *(Ex Parte Relief Not Sought)*Emergency MOTION for Temporary Restraining Order *(Ex Parte Relief Not Sought)* filed by David J. Nastri. Total Time: 4 hours and 56 minutes(Court Reporter Corinne Thomas) (Barry, L) (Entered: 05/22/2023) |
| 05/10/2023 | 39 | Minute Entry. Proceedings held before Judge Janet Bond Arterton: Preliminary Injunction Hearing held on 5/10/2023 re 8 Emergency MOTION for Preliminary Injunction *(Ex Parte Relief Not Sought)*Emergency MOTION for Temporary Restraining Order *(Ex Parte Relief Not Sought)* filed by David J. Nastri. Total Time: 5 hours and 19 minutes(Court Reporter Corinne Thomas) (Barry, L) (Entered: 05/22/2023) |
| 05/11/2023 | 37 | TRANSCRIPT of Proceedings: Type of Hearing: Preliminary Injunction Hearing. Held on 5/9/2023 before Judge Janet Bond Arterton. Court Reporter: Corinne Thomas. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or |

| | | purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 6/1/2023. Redacted Transcript Deadline set for 6/11/2023. Release of Transcript Restriction set for 8/9/2023. (Thomas, Corinne) (Entered: 05/11/2023) |
|---|---|---|
| 05/30/2023 | 40 | MOTION for Leave to File *Supplemental Brief* by Katie Dykes. (Attachments: # 1 Koons v. Platkin)(Holzman, Timothy) (Entered: 05/30/2023) |
| 05/31/2023 | 41 | ORDER granting 40 Defendant's Motion for Leave to File a Supplemental Brief, not to exceed 5 pages, addressing the recently issued decision Koons v. Platkin, No. 22-7464 (RMB/AMD), 2023 WL 3478604 (D.N.J. May 16, 2023). Defendant's brief shall be filed by June 7, 2023; Plaintiff's response brief, also not to exceed 5 pages, shall be filed by June 14, 2023. Signed by Judge Janet Bond Arterton on 5/31/2023. (Anderson, Colleen) (Entered: 05/31/2023) |
| 06/07/2023 | 42 | RESPONSE re 41 Order on Motion for Leave to File, *Defendant's Supplemental Brief* filed by Katie Dykes. (Sullivan, Blake) (Entered: 06/07/2023) |
| 06/14/2023 | 43 | RESPONSE re 41 Order on Motion for Leave to File, 42 Response filed by David J. Nastri. (Attachments: # 1 Exhibit A - Excerpted Testimony of Professor Saul Cornell) (Atkinson, Cameron) (Entered: 06/14/2023) |
| 07/04/2023 | 44 | TRANSCRIPT of Proceedings: Type of Hearing: Preliminary Injunction Hearing. Held on 5/10/2023 before Judge Janet Bond Arterton. Court Reporter: Corinne Thomas. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 7/25/2023. Redacted Transcript Deadline set for 8/4/2023. Release of Transcript Restriction set for 10/2/2023. (Thomas, Corinne) (Entered: 07/04/2023) |
| 07/07/2023 | 45 | NOTICE by Katie Dykes *of Supplemental Authority* (Attachments: # 1 MD USDC Decision)(Holzman, Timothy) (Entered: 07/07/2023) |
| 07/12/2023 | 46 | ORDER denying 8 Motion for Preliminary Injunction and 8 Motion for TRO as moot in light of the amended preliminary injunction 14 ; granting 22 Motion to Dismiss for Lack of Jurisdiction; and denying 14 Motion for Preliminary Injunction for lack of subject matter jurisdiction. Signed by Judge Janet Bond Arterton on 7/12/2023. (Anderson, Colleen) (Entered: 07/12/2023) |
| 07/12/2023 | 47 | NOTICE OF APPEAL as to 46 Order on Motion for Preliminary Injunction,, Order on Motion for TRO,,,, Order on Motion to Dismiss/Lack of Jurisdiction, by David J. Nastri. Filing fee $ 505, receipt number ACTDC-7412024. (Atkinson, Cameron) (Entered: 07/12/2023) |
| 07/14/2023 | 48 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 47 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Dinah Milton Kinney, Clerk. Documents |

| | | manually filed not included in this transmission: none (Sichanh, Christina) (Entered: 07/14/2023) |
|---|---|---|
| 07/17/2023 | 49 | MOTION for Reconsideration re 46 Order on Motion for Preliminary Injunction,, Order on Motion for TRO,,,, Order on Motion to Dismiss/Lack of Jurisdiction, by David J. Nastri. (Attachments: # 1 Exhibit A - Defendant's Response To Plaintiff's Interrogatories (March 20, 2023), # 2 Exhibit B - Excerpted Preliminary Injunction Testimony of Col. Chris Lewis)(Atkinson, Cameron) (Entered: 07/17/2023) |
| 07/17/2023 | 50 | Memorandum in Support re 49 MOTION for Reconsideration re 46 Order on Motion for Preliminary Injunction,, Order on Motion for TRO,,,, Order on Motion to Dismiss/Lack of Jurisdiction, filed by David J. Nastri. (Attachments: # 1 Exhibit A - Defendant's Response To Plaintiff's Interrogatories (March 20, 2023), # 2 Exhibit B - Excerpted Preliminary Injunction Testimony of Col. Chris Lewis)(Atkinson, Cameron) (Entered: 07/17/2023) |
| 07/19/2023 | 51 | ORDER: Defendant is requested to respond to Plaintiff's Motion for Reconsideration 49 , including whether the evidence submitted by Plaintiff purporting to show instances of enforcement of the Challenged Regulation between 2016 and 2022 would be sufficient to establish standing, by July 31, 2023, not to exceed 15 pages. Any reply by Plaintiff shall be filed by August 7, 2023.<br>Signed by Judge Janet Bond Arterton on 7/19/2023. (Anderson, Colleen) (Entered: 07/19/2023) |
| 07/26/2023 | 52 | Marked Exhibit List for the dates of 5/9/2023 and 5/10/2023. (Barry, L) (Entered: 07/26/2023) |
| 07/26/2023 | 53 | Supplemental Marked Exhibit List for the dates of 5/9/2023 and 5/10/2023. (Barry, L) (Entered: 07/31/2023) |
| 07/31/2023 | 54 | OBJECTION re 49 MOTION for Reconsideration re 46 Order on Motion for Preliminary Injunction,, Order on Motion for TRO,,,, Order on Motion to Dismiss/Lack of Jurisdiction, filed by Katie Dykes. (Attachments: # 1 Exhibit A - PI Hearing Transcripts Excerpts) (Sullivan, Blake) (Entered: 07/31/2023) |
| 08/07/2023 | 55 | REPLY to Response to 49 MOTION for Reconsideration re 46 Order on Motion for Preliminary Injunction,, Order on Motion for TRO,,,, Order on Motion to Dismiss/Lack of Jurisdiction, filed by David J. Nastri. (Attachments: # 1 Exhibit A - [Unreported Case] Miller v. Superintendent of the Shawangunk Correctional Facility, No. 1:18-cv-01762 (S.D.N.Y. Oct. 26, 2020), # 2 Exhibit B - Plaintiff's Motion To Hold Appeal In Abeyance (2nd Cir.), # 3 Exhibit C - 2nd Circuit Order Holding Plaintiff's Appeal In Abeyance, # 4 Exhibit D - Excerpted Preliminary Injunction Hearing Testimony of Colonel Christopher Lewis)(Atkinson, Cameron) (Entered: 08/07/2023) |
| 08/16/2023 | 56 | ORDER denying 49 Motion for Reconsideration re 46 Order on Motion for Preliminary Injunction, Order on Motion for TRO, Order on Motion to Dismiss/Lack of Jurisdiction. The Clerk is directed to notify the Second Circuit that a decision has been issued on the motion and to close this case. Signed by Judge Janet Bond Arterton on 8/16/2023. (Anderson, Colleen) (Entered: 08/16/2023) |
| 08/22/2023 | 57 | JUDGMENT entered in favor of Katie Dykes against David J. Nastri.<br><br>For Appeal Forms please go to the following website: http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms<br>Signed by Clerk on 8/22/2023.(Barry, L) (Entered: 08/22/2023) |
| 08/22/2023 | | JUDICIAL PROCEEDINGS SURVEY - FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this |

| | | survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi-bin/Dispatch.pl?survey<br>(Barry, L) (Entered: 08/22/2023) |
|---|---|---|
| 08/28/2023 | [58](#) | AMENDED NOTICE OF APPEAL amending [47](#) Notice of Appeal, [46](#) Order on Motion for Preliminary Injunction,, Order on Motion for TRO,,,, Order on Motion to Dismiss/Lack of Jurisdiction, [57](#) Judgment, [56](#) Order on Motion for Reconsideration, by David J. Nastri. Filing fee $ 505, receipt number ACTDC-7463539. (Atkinson, Cameron) (Entered: 08/28/2023) |
| 08/29/2023 | [59](#) | ORDER of USCA as to [47](#) Notice of Appeal filed by David J. Nastri. USCA Case Number 23-1023 (Sichanh, Christina) (Entered: 08/29/2023) |

<table>
<tr><td colspan="4" align="center">**PACER Service Center**</td></tr>
<tr><td colspan="4" align="center">**Transaction Receipt**</td></tr>
<tr><td colspan="4" align="center">09/12/2023 21:59:09</td></tr>
<tr><td>**PACER Login:**</td><td>AtkinsonCameron</td><td>**Client Code:**</td><td></td></tr>
<tr><td>**Description:**</td><td>Docket Report</td><td>**Search Criteria:**</td><td>3:23-cv-00056-JBA</td></tr>
<tr><td>**Billable Pages:**</td><td>7</td><td>**Cost:**</td><td>0.70</td></tr>
</table>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID J. NASTRI, ESQ., | : | |
| | : | DKT No.: 3:23-cv-00056-JBA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KATIE DYKES, in her official capacity only, | : | |
| | : | |
| Defendant. | : | July 12, 2023 |

## <u>NOTICE OF APPEAL</u>

The Plaintiff, David J. Nastri, hereby gives notice of his appeal of the Court's July 12, 2023 order (Dkt. 46) granting the Defendant's motion to dismiss his amended complaint (Dkt. 22) and his motion for a preliminary injunction (Dkt. 14).

The Plaintiff,

By: /s/ Cameron L. Atkinson /s/
Cameron L. Atkinson, Esq.
(ct31219)
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Cameron L. Atkinson /s/

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAVID J. NASTRI, ESQ.,            :

                          :          DKT No.: 3:23-cv-00056-JBA

      Plaintiff,             :

                          :

v.                            :

                          :

KATIE DYKES, in her official capacity   :

only,                         :

                          :

      Defendant.           :          August 28, 2023

## <u>AMENDED NOTICE OF APPEAL</u>

Pursuant to Fed. R. App. P. 3 and 4, the Plaintiff, David J. Nastri, hereby amends his notice of his appeal. Dkt. 47.

The Plaintiff, David J. Nastri, hereby gives notice of his appeal to the United States Court of Appeals for the Second Circuit of the Court's July 12, 2023 order (Dkt. 46) granting the Defendant's motion to dismiss his amended complaint (Dkt. 22) and his motion for a preliminary injunction (Dkt. 14) as well as its order denying his motion for reconsideration (Dkt. 56).

                The Plaintiff,

                By: <u>/s/ Cameron L. Atkinson /s/</u>
                Cameron L. Atkinson, Esq.
                (ct31219)
                ATKINSON LAW, LLC
                122 Litchfield Rd., Ste. 2
                P.O. Box 340
                Harwinton, CT 06791
                Telephone: 203.677.0782
                Email: catkinson@atkinsonlawfirm.com

**CERTIFICATION OF SERVICE**

The undersigned hereby certifies that, on the foregoing date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties and counsel of record who have appeared by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

<u>/s/ Cameron L. Atkinson /s/</u>

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID NASTRI,<br><br>　　　*Plaintiff,*<br><br>　　　*v.*<br><br>KATIE DYKES, Commissioner for the Department of Energy and Environmental Preservation,<br><br>　　　*Defendant.* | Civil No. 3:23-cv-0056 (JBA)<br><br>July 12, 2023 |

**RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S PRELIMINARY INJUNCTION**

Plaintiff David Nastri filed an amended complaint on January 28, 2023, alleging pursuant to 42 U.S.C. § 1983 that Conn. Agencies Reg. § 23-4-1(c) violates his Second Amendment rights because it prevents him from carrying a pistol or revolver for the purpose of self-defense in case of confrontation in Connecticut state parks and forests, and because the regulation has no "historical analogue" that would justify it under the Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (Jun. 23, 2022). (Am. Compl. [Doc. # 13] ¶¶ 50-64.) Plaintiff seeks a permanent injunction barring Defendant Katie Dykes, Commissioner of the Connecticut Department of Energy and Environmental Protection ("DEEP") from enforcing the regulation, as well as costs and attorneys' fees. However, Plaintiff has also filed a preliminary injunction motion seeking to bar Defendant from enforcing the regulations "until such time as the Court makes a final determination on the merits in this matter" or in the alternative, for the Court to "consolidate the preliminary injunction hearing with the trial on the merits in this matter pursuant to Fed. R. Civ. P. 65." (Pl.'s Prelim. Inj. Mot. ("Pl.'s PI") [Doc. # 14].)

Defendant's opposition argues among other things that Plaintiff cannot show a likelihood of succeeding on the merits because (1) he brings a facial rather than as-applied challenge, and cannot show that the regulation is invalid in all its applications; (2) he has not shown that the plain text of the Second Amendment covers his proposed course of conduct; (3) the regulation is consistent with historical traditions of firearm regulation and has historical analogues. (Def.'s Opp'n to Pl.'s PI [Doc. # 23].) Additionally, Defendant has moved to dismiss the Amended Complaint for lack of standing, arguing that Plaintiff lacks a sufficiently concrete intent to engage in proscribed conduct and fails to show any imminent and credible threat of prosecution (Def.'s Mot. to Dismiss ("Def.'s MTD") [Doc. # 20]); Plaintiff maintains that he plausibly alleges that he has and will continue to visit Connecticut state parks and forests, and that he "seeks" to do so while carrying a firearm, which is sufficient to confer standing. (Pl.'s Opp'n to MTD [Doc. # 27].)

I.      **Background**

   A.      **Conn. Agencies Regs. § 23-4-1(c)**

DEEP was established by Conn. Gen. Stat. § 22a-2d, which defines its goals as "(A) Conserving, improving and protecting the natural resources and environment of the state, and (B) preserving the natural environment while fostering sustainable development." Conn. Gen. Stat. § 22a-5(3) specifically requires the Commissioner to "provide for the protection, enhancement and management of the public forests, parks, open spaces and natural area preserves." Conn. Agencies Regs. § 23-4-1(c), issued pursuant to DEEP's regulatory authority under Conn. Gen. Stat. § 23-4 regulating "hunting/weapons", states that "[h]unting or carrying of firearms, archery equipment or other weapons, including but not limited to air rifles and slingshots, is not permitted in any state park or forest except as authorized by the Department of Energy and Environmental Protection. All carrying or use of weapons is subject to applicable provisions of the Connecticut General Statutes and regulations adopted

2

thereunder." Penalties for violating the provision include a fine of thirty-five dollars, eviction for a period of twenty-four hours or, if convicted of a violation under the provisions of Conn. Gen. Stat. § 51-164n, a violator may be prohibited from entering any state park by the Commissioner for up to a year. Conn. Agencies Regs. § 23-4-5; Conn. Gen. Stat. § 23-4.

### B. Plaintiff David Nastri

Plaintiff is a Connecticut Army National Guard veteran who received "comprehensive training" on the safe and effective use of firearms. (Am. Compl. ¶¶ 25, 28.) He has passed "rigorous background checks" in order to obtain his FINRA licenses as a financial advisor, holds a clean disciplinary record as a financial advisor, and has no record of disciplinary history since being licensed to practice law in Connecticut in November 2018. (*Id.* ¶ 29-30.) Plaintiff has a pistol permit that he estimates was issued 30 years ago (his current permit does not reflect its initial issue date), completed the associated safety training and has "held it in good standing since receiving it." (*Id.* ¶ 32.)

Plaintiff's complaint alleges that he "intends to and will continue to make use of Connecticut state parks and forests in the immediate and foreseeable future for the purpose of recreation such as hiking," and that his prospective use of Connecticut state parks and forests is "not speculative" because he has gone to Sleeping Giant State Park for a hike twice since the filing of the original complaint in January 2023; once by himself, and once with his girlfriend. (*Id.* ¶ 34-35.) At the preliminary injunction hearing, Plaintiff testified that he uses Sleeping Giant State Park once a month during the year to hike, Naugatuck State Forest once or twice a year to hike, and Farmington River Canal Trail to walk or run four or five times a week. (Prelim. Inj. Hrg. Day 1 Tr., May 9, 2023 [Doc. # 37] at 148-149.) He has been using Sleeping Giant State Park since he was 15 years old, Naugatuck State Forest for 40 years, and Farmington River Canal Trail for 10 years. (*Id.* at 149.) He does not have specific plans to visit Naugatuck State Forest or Sleeping Giant State Park in the future, but he does not

3

typically put a date in his calendar when he is planning to go to a state park or forest because his visits are "impromptu" and the state parks he typically visits are close to his home. (*Id.* at 203, 172-174.)

Plaintiff "actively carries his handgun almost every time he leaves his home and almost every place that he goes, but he abides by the laws and rules that govern where he may carry it," and so "[w]hen he must go to a place where the law does not permit him to carry a firearm," Plaintiff "secures his firearm in a locked safe that he has bolted to the floor of his motor vehicle." (Am. Compl. ¶¶ 34-36.) Prior to learning of the regulation, Plaintiff carried his handgun into Sleeping Giant State Park and Naugatuck State Forest "[e]very time [he] went there," and had been carrying his handgun on the Farmington River Canal Trail about three times a week, all for the purpose of self-defense. (Prelim. Inj. Hrg. Day 1 Tr. at 150-151.) Plaintiff became aware of the challenged regulation in the summer of 2022 when he got his hunting license and read through the DEEP regulations related to firearms in state parks, including the prohibition on carrying firearms in state parks and forests for purposes other than hunting in designated areas. (*Id.* at 145, 147.)

Plaintiff is "aware" of a procedure to "request permission to carry firearms into a state park or forest," but believes that the context is "normally not self-defense," and the only instance he was aware of where an exception was made was for a Civil War reenactment. (*Id.* at 171.) He has seen the form that DEEP provides for individuals to request permission to bring a firearm into the park but does not know where he could find one for the purposes of submitting it and has never submitted the form himself. (*Id.* at 171-172.) In November of 2022, Plaintiff stopped carrying his firearm in state parks and forests. (Pl.'s Dep. Tr. [Doc. # 33-1], Exh. A, to Def.'s MTD Reply, at 202:5-10.) Because under Conn. Agencies Regs. § 23-4-1(c), storing his handgun in a locked container in his motor vehicle at a state park or forest parking lot would still be "within the confines of a Connecticut state park or forest and would

4

be in violation of the law," he also leaves his handgun at home "every time" that he "intends to visit a state park or forest." (Am. Compl. ¶¶ 36, 38.) Plaintiff testified that he was aware the violation could result in a $35 fine or being banned from state parks and forests for between 24 hours to a year. (Prelim. Inj. Hrg. Day 1 Tr. at 163-64.) Plaintiff also testified that it was his understanding that violating the regulation might jeopardize his pistol permit, and that he would have to report the penalties to FINRA as a licensed financial advisor, which in turn would result in the violations being noted on his U4 (permanent record as a financial advisor), and possibly his discharge from his job. (*Id.* at 164-165, 168.)

Plaintiff testified that he has never encountered an Environmental Conservation Police Division ("EnCon") police officer while visiting a state park, and that he not aware of anyone else who has had the regulation enforced against them. Plaintiff also confirmed that the regulation has never been enforced against him, nor has any EnCon officer or other police officer threatened him with enforcement of that regulation. (Prelim. Inj. Hrg. Day 1 Tr. at 200-201.) Plaintiff stated that "until such time that this regulation is overturned," he "will not carry a firearm in a state park or forest" because as a licensed attorney, he "will not willfully disobey a law[.]" (*Id.* at 169.) Although he currently abides by Conn. Agencies Regs. § 23-4-1(c) and states no intention to discontinue doing so, Plaintiff alleges that he "seeks to carry a handgun for the purpose of self-defense" while "making such regular use of Connecticut state parks and forests." (Am. Compl. ¶ 38.)

## II.   Procedural History

Plaintiff filed an emergency motion for preliminary injunction and temporary restraining order on January 17, 2023; the Court denied the TRO at the telephonic status conference held on January 27, 2023 and directed the Plaintiff to file an amended complaint responsive to Defendant's forthcoming motion to dismiss, as well as to file an amended motion for preliminary injunction incorporating any relevant information new to the

amended complaint. (*See* Doc. # 12.) An amended motion for preliminary injunction was filed on January 28, 2023, and Defendant filed her motion to dismiss on March 30, 2023. The Court held an evidentiary hearing and oral argument on May 9, 2023, and May 10, 2023, providing both sides the opportunity to submit evidence relevant to both standing and the substantive issues raised by the motion for preliminary injunction. The parties were granted permission to submit supplemental briefing on May 31, 2023, and briefing concluded on June 14, 2023.

## III.   **Legal Standard**

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction will be granted "when the court lacks the statutory or constitutional power to adjudicate the case." *Soundkeeper, Inc. v. A & B Auto Salvage, Inc*., 19 F. Supp. 3d 426, 428 (D. Conn. 2014).[1] "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," which includes the burden to prove his own standing. *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs*., LLC, 822 F.3d 47, 56 (2d Cir. 2016). When "the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden," *id.*, but the complaint must "allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue" and courts "need not credit a complaint's conclusory statements without reference to its factual context." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145-46 (2d Cir. 2011). However, "a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering

---

[1] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

evidence beyond the Pleading," at which time a plaintiff is required to "come forward with evidence of [his] own to controvert that presented by the defendant" if defendant's evidence reveals factual disputes. *Carter,* 822 F.3d at 57. "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

Because Defendant submitted Plaintiff's deposition transcript in her reply to Plaintiff's opposition to the motion to dismiss, the Court will evaluate the motion to dismiss under 12(b)(1) as a fact-based motion and consider all evidence relevant to standing that was submitted as part of the preliminary injunction proceeding in resolving factual questions and determining whether Plaintiff has established his standing.

## IV.    Discussion

"The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'" *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014)). An "injury in fact" must be "concrete, particularized, and actual or imminent," *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016), rather than "conjectural" or "hypothetical." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).

Although Conn. Agencies Reg. § 23-4-1(c) has not been enforced against Plaintiff, he may establish that an injury in fact is "imminent" such that he has standing to bring a "pre-enforcement" challenge to the Challenged Regulation "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Driehaus*, 573 U.S. at 159.

"Courts apply a three-prong test to assess the existence of a cognizable injury in fact in the context of pre-enforcement challenges," requiring a plaintiff to show "(1) 'an intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) that the intended conduct is 'proscribed by' the challenged law; and (3) that 'there exists a credible threat of prosecution thereunder.'" *Vitagliano v. Cnty. of Westchester*, No. 23-30, 2023 WL 4095164, at *5 (2d Cir. June 21, 2023) (quoting *Driehaus*, 573 U.S. at 159.) Plaintiff "need not first expose himself to liability before bringing suit to challenge . . . the constitutionality of a law threatened to be enforced," *Picard*, 42 F.4th at 97, but he must show an "actual and well-founded fear that the law will be enforced against [him]." *Vermont Right to Life Committee, Inc. v. Sorrell,* 221 F.3d 376, 382 (2d Cir. 2000).

Because neither side disputes that Plaintiff's conduct is proscribed by the Challenged Regulations, the only issues in dispute are whether Plaintiff demonstrates an intent to engage in the proscribed conduct and whether there is a credible threat of prosecution under the challenged law.

### A.    Intention to Engage in Proscribed Conduct

Plaintiff's counsel argues that because Plaintiff has a prior history of engaging in the proscribed conduct, ceased that conduct based on a fear of prosecution or legal consequences, and actively maintains a desire to re-engage in that conduct once it becomes legal, he has demonstrated an intent to engage in conduct proscribed by the statute. Defendant argues that Plaintiff must intend to "engage in the prohibited conduct" by bringing his firearm to the park with him *despite* the regulation prohibiting it—in other words, by actually violating the law—and that based on Plaintiff's representations at his April 27, 2023 deposition stressing that "his practice is not to carry a firearm in state parks and forests" and that he intends to continue this practice "while § 23-4-1(c) remains in place," he cannot make that showing. (Def.'s MTD Reply at 4.)

Defendant's position is contrary to both Supreme Court and Second Circuit precedent. In *Steffel v. Thompson*, 415 U.S. 452, 460 (1974), a plaintiff sought to distribute handbills against the war in Vietnam after having been twice warned to stop doing so by the police; although he did not name a date and time certain that he intended to distribute handbills again, the Supreme Court found that he had standing to challenge the law prohibiting him from doing so. More recently, the Supreme Court held in *Holder v. Humanitarian L. Project,* 561 U.S. 1, 15–16 (2010), that plaintiffs had standing when they claimed they "provided support to the [allegedly foreign terrorist groups] before the enactment of § 2339B and that they would provide similar support again if the statute's allegedly unconstitutional bar were lifted" but had not been yet threatened with enforcement against them. Second Circuit cases applying *Driehaus* have resulted in similar outcomes. *See Knife Rights v. Vance,* 802 F.3d 377, 386 (2d Cir. 2015) (finding that the plaintiffs demonstrated an intent to engage in proscribed conduct by asserting that they had "in the past carried, and wish again to carry, common folding knives, but do not do so because they cannot confidently determine which such knives . . . [are] prohibited . . . and they do not wish to risk prosecution" after already being prosecuted once for the same conduct); *Silva v. Farrish*, 47 F.4th 78, 87 (2d Cir. 2022) (finding that plaintiffs had standing even without outlining their plans to engage in proscribed conduct "with specificity" because they had previously fished in a particular area in violation of state fishing regulations, had "already been subjected to enforcement actions" for the conduct, and alleged that they were "deterred and chilled" from doing so again because they feared prosecution).

Most recently, the Second Circuit held in *Vitagliano*, 2023 WL 4095164, at *4, that a plaintiff who had a "desire to engage in sidewalk counseling" outside abortion clinics had standing even though she "had not engaged in sidewalk counseling prior to the Act's passage" or "alleged concrete plans to do so at any point in the future." *Id.* at *5. The Second Circuit

explained that "a plaintiff asserting a pre-enforcement challenge need only allege 'an intention to engage in a course of conduct,' which does not necessarily require specification of the date and time she plans to do something of constitutional significance." *Id.* (citing *Picard*, 42 F.4th at 97). Describing "the origin of her desire to become a sidewalk counselor, the steps she took to train and prepare to serve as a sidewalk counselor, the abortion clinic outside which she intends to provide sidewalk counseling, and the approach she plans to take when having sidewalk-counseling conversations," the Second Circuit held, "more than suffice[d]" to demonstrate her intent. *Id.* at *6.[2]

Under this standard, Plaintiff has satisfied the requirement of pleading that he would intend to "engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" if not for the challenged regulation. In his deposition, Plaintiff testified that at one point, it was his practice to carry his firearm in state parks in forests until he became aware that the regulation prohibited his conduct, (Pl.'s Dep. Tr. at 202), and that it would be his practice not to carry his firearm in a state park or forest only "until the end of this case" when he presumes the regulation will be enjoined. (*Id.*) Plaintiff also reached out

---

[2] The Court is aware that some other district courts in this circuit have relied on *Driehaus*, in which the plaintiffs pled with specificity the statements they intended to make in future election cycles that would violate the law, 573 U.S. at 149, to find that a plaintiff must plead exactly how and when he or she intends to engage in proscribed conduct. *See Antonyuk v. Bruen*, No. 1:22-CV-0734 (GTS/CFH), 2022 WL 3999791 at *17 (N.D.N.Y. Aug. 31, 2022) (*Antonyuk* I) (holding that a plaintiff alleging that he "desires," "wants," "wishes" or "would like" to continue to carry a concealed handgun is not enough if he does not indicate an "*intent*" to do so in violation of the statute), *and Frey v. Bruen*, No. 21 CV 05334, 2022 WL 522478 at *5 (S.D.N.Y Feb. 22, 2022) (holding that a signed, sworn declaration that the plaintiffs "intend" to carry their handguns for all lawful purposes was insufficient to show standing when it did not allege "concrete plans to violate the New York Penal laws."). However, *Vitagliano* clarifies that neither prior engagement in the conduct nor enforcement of the statute is required so long as plaintiffs plead with an adequate level of detail their "earnest desire" and the steps they had taken to engage in the proscribed conduct "but-for" the statute, 2023 WL 4095164 at *6. In this Court's view, *Vitagliano* forecloses the interpretation of *Driehaus* advanced in cases like *Antonyuk* and *Frey*.

to an agent of Defendant to inquire whether the challenged regulation prohibited members of the public from carrying licensed pistols or revolvers into state parks, which further suggests that he is actively seeking ways in which to lawfully bring his firearm to currently proscribed locations. (*See* Am. Compl. Exh. M).[3] Under *Vitagliano* and *Knife Rights,* his pleadings and testimony are sufficiently detailed to satisfy this part of the test. *See also Angelo v. D.C.*, No. CV 22-1878 (RDM), 2022 WL 17974434, at *6 (D.D.C. Dec. 28, 2022) (finding that the plaintiffs alleged an intent to engage in proscribed conduct when they alleged that "[b]ut for D.C. law, [they] would carry [their] concealed handgun[s] on Metro trains and buses for self-defense" and that they "do not do so now because [they] fear arrest and prosecution," although ultimately dismissing for a lack of standing based on the absence of a credible threat of prosecution.)[4]

---

[3] Defendant cites in support to *Lujan*, 504 U.S. at 560, in which the Supreme Court held that the plaintiff's visitation to the areas in which endangered animals could be observed in the past and professed intent to return to those places in the future was "simply not enough" because "'some day' intentions—without any description of concrete plans, or indeed even any specification of **when** the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* at 564 (emphasis in original). Based on *Lujan,* Defendant contends that the fact Plaintiff "had visited" state parks and forests in the past "proves nothing," because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects," (Def.'s MTD at 7-8) (quoting Am. Compl. ¶¶ 34-38 and *Lujan,* 504 U.S. at 564.) However, Plaintiff persuasively distinguishes the present case from *Lujan* by pointing out that taking a trip to embark on a safari in Sri Lanka and Egypt requires a level of planning that made it unlikely any trips were imminent without evidence of definite steps to visit, unlike Plaintiff's ability to visit a state park or forest by walking a few minutes from his house without the need for buying tickets or arranging transportation.

[4] To the extent Defendant is concerned that nothing distinguishes Plaintiff from the average citizen with a "generalized grievance common to any other member of the public who may disagree with the rule but follows it anyway," (Def.'s MTD Reply at 7), the second prong of the *Driehaus* test alleviates these concerns by requiring a showing of the imminent nature of future injury particularized to Plaintiff's circumstances. *See infra* at 16-17.

The Court also rejects the notion "that Plaintiff[] must allege the precise date and time on which [he] intend[s] to next visit" a place in which firearms are prohibited if they were "visited as part of their ordinary, daily routines" because "people's lives do not necessarily lay out into a scheduling book that run[s] six months or a year . . . into the future." *Koons v. Platkin*, No. CV 22-7463 (RMB/AMD), 2023 WL 3478604, at *43 (D.N.J. May 16, 2023); *see also Vitagliano*, 2023 WL 4095164 at *5. Plaintiff alleges that he "intends to and will continue to use" Connecticut state parks and forests "in the immediate and foreseeable future," (Pl.'s MTD Opp'n at 9), and made clear in his testimony at the preliminary injunction hearing that he has regularly visited Sleeping Giant State Park, Naugatuck State Park, and Farmington Canal Trail for some time now, and that he has no plans to stop even if he does not mark the specific dates he intends to go on a calendar.

### B. Credible Threat of Prosecution

Any specific threats directed at Plaintiff, *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016), and "the extent of [] enforcement" of the challenged law, or lack thereof, *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019), are both relevant in evaluating the credibility of any threat of enforcement. While Plaintiff is obviously not at current risk of being prosecuted under the Challenged Regulation because he is not currently violating it, Plaintiff's counsel argued that Plaintiff's email exchange with Deputy DEEP Commissioner Mason Trumble gave him reason to believe the regulation would be enforced against him if he were to violate it. Plaintiff wrote to Defendant in November of 2022 to "obtain clarity on DEEP regulations concerning the carrying/possession of firearms in state parks and forests," explaining that his inquiry was related to "possessing a properly licensed pistol or revolver for the purpose of self-defense in those locations," and that it was his "expectation" that a rule existed that "specifies that a person who is licensed to carry pistols or revolvers in the state of Connecticut is authorized to do so in a state park or forest." (Am. Compl. Exh. M. [Doc. # 13-

13] at 3.) Trumble responded by writing "Thanks for reaching out . . . I believe this resource addresses the questions you posed regarding the regulation," and attached a hyperlink directing him to a report by Connecticut Office of Legislative Research's Chief Attorney Janet Kaminski Leduc titled "Carrying Handguns in Connecticut State Parks or Forests" ("Leduc Report") (Am. Compl. Exh. N [Doc. # 13-14].)

The Leduc Report states that a person may legally possess a handgun in a state park or forest "only when carrying the handgun for hunting small game . . . or participating in other authorized activities, such as at a firearms range or during a hunter education class," and only if they have a permit to do so under Conn. Gen. Stat. § 29-28. *Id.* It also includes information on the penalties for illegally carrying weapons in violation of the regulations, DEEP's authority over parts of the Appalachian Trail, and federal law on the carrying of handguns on the Appalachian trail.[5] Perhaps Mr. Trumble's response could have been construed as a threat if, for example, he had specifically pointed out or excerpted the section on potential penalties to Plaintiff, or cautioned him against violating the regulation. However, he did neither; Plaintiff frames his inquiry as a general one, rather than a specific statement of intent on his part to carry firearms in the park, giving Trumble no reason to respond with a threat or warning.

Even absent a particularized threat against Plaintiff, courts are "generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund," *Cayuga Nation*, 824 F.3d at 331, especially if the government entity in question "decline[s] to represent that [government] officials would not enforce the law."

---

[5] In response to this email, Plaintiff asked Mr. Trumble to convey his request to Defendant Dykes to "take immediate steps" to amend the regulation to bring state law into compliance with the Supreme Court's decision in *Bruen*; neither Defendant nor Mr. Trumble responded or took action on his request. (Am. Compl. ¶ 23-24.)

13

*Vitagliano*, 2023 WL 4095164, at *6. Colonel Lewis, the division director for the Environmental Conservation Police Division, testified on the second day of the preliminary injunction hearing that if EnCon found someone carrying a weapon in the state park, absent extenuating circumstances, they would issue a charge of possession of weapon in a state park under the challenged regulation. However, in *Vitagliano,* it was significant that the plaintiff was seeking to enjoin "a newly enacted law aimed specifically at Westchester County reproductive health care facilities and designed to curb the very conduct in which she intends to engage outside such facilities." 2023 WL 4095164 at *7. In cases where the statute or regulation has not been recently passed, the presumption the government will enforce its own laws "in and of itself, is not sufficient to confer standing, as courts also consider the extent of that enforcement in determining whether a credible threat of prosecution exists." *Adam v. Barr*, 792 F. App'x 20 (2d. Cir. 2019). In *Adam,* because the plaintiff "was unable to marshal examples of enforcement actions that involved" the proscribed conduct, *Vitagliano* at *7, the Second Circuit found that there was no "particularize[d]" threat of enforcement. *Adam,* 792 F. App'x at 23. To the contrary, plaintiff was "simply. . . at risk just like any other person in the country who might violate the [the statute]," and so "the threat of enforcement against him [was] insufficiently imminent to confer Article III standing." *Id.*

The case at hand is more like *Adam* than *Cayuga Nation* and *Vitagliano.* The Challenged Regulation is not "recent"—it has been in place since 1918, and there is no evidence in the record of any instance in which the law has *ever* been enforced. EnCon's Agency Crime Review statistics (Pl.'s Exh. 10), list only 4 "Weapon Law Violations" for 2019; Colonel Lewis explained at the hearing that those violations might encompass improper possession of a firearm, but could also encompass possession without a permit, or being a felon in possession of handguns, as well as offenses involving other dangerous weapons such as gravity knives or brass knuckles. Neither party's witnesses have personal knowledge of

14

the Challenged Regulation being enforced; Plaintiff admitted that he has never heard of this regulation being enforced against *anyone*, and Colonel Lewis testified that he could not recall a single circumstance in which an EnCon ranger or officer had been required to enforce the regulation during his time working with EnCon. As a practical matter, one of the factors affecting the likelihood of enforcement is EnCon's staffing levels. Colonel Lewis testified that EnCon regularly experiences staffing challenges, and that EnCon does not have the capacity to station an officer at every one of Connecticut's state parks and forests at the same time, and Plaintiff testified during his preliminary injunction testimony that he has never encountered an EnCon officer in state parks or forests.

Finally, the case at hand is easily distinguishable from one in which the threat of enforcement is imminent based on the actions and public statements of the government agency charged with enforcing the rule. *Cf. Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 WL 17100631, at *4 (W.D.N.Y. Nov. 22, 2022) (currently on appeal) (finding that public statements from the New York City governor and police department suggesting a "zero tolerance" policy, when considered in conjunction with the recency of the law, showed that plaintiff faced "sufficiently imminent" enforcement).[6] Colonel Lewis testified that EnCon officers go out of their way to take a non-confrontational approach with members of the public whenever possible; officers do not regularly search patrons upon entry for firearms, and unless an EnCon officer has a suspicion that someone was transporting illegal game or fish, or carrying a cooler containing alcohol in an area where alcohol was prohibited, officers do not search patrons upon entry to a park. Plaintiff himself argues that DEEP "does nothing

---

[6] Plaintiff also adds in a footnote that he could be charged with criminal trespass for bringing a firearm to a state park or forest, but once again, the complaint reflects neither a specific threat of enforcement nor even a general policy of the state of Connecticut from which the Court can determine that there is an "imminent" threat these statutes will be enforced against Plaintiff in that particular manner. (Pl.'s Opp'n at 7.)

to ensure that the public complies with the prohibition on firearms possession prior to entering state parks and forests." (Pl.'s PI Mot. at 35.) By his own account, the lack of inspection mechanism undermines the idea that any kind of enforcement might be "sufficiently imminent" against Plaintiff or someone like him who carries a concealed firearm in state parks or forests.

The evidence in the record shows that (1) Plaintiff has never encountered an EnCon officer while in a state park or forest; (2) the chances of encountering an EnCon officer are rare due to staffing challenges; (3) EnCon officers do not randomly search park patrons for firearms; (4) Plaintiff testified no one has noticed him carrying a concealed firearm in the last year, (Pl.'s Dep. Tr. at 142-43); and (5) Plaintiff was never stopped and ticketed during the period he was unknowingly carrying his firearm in state parks and forests in violation of the regulation. On these facts, it becomes clear that Plaintiff's theory of standing is nothing more than the sort of "highly attenuated chain of possibilities" that the Supreme Court has found "does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. While "'[t]he identification of a credible threat sufficient to satisfy the imminence requirement . . . necessarily depends on the particular circumstances at issue," it "will not be found where plaintiffs do not claim that they have ever been threatened with prosecution, that prosecution is likely, or even that a prosecution is remotely possible.'" *Picard,* 42 F.4th at 98 (2d Cir. 2022); *see Angelo*, 2022 WL 17974434, at *6 (finding that the threat of enforcement was "speculative" and thus insufficient to confer standing when plaintiffs did not allege prior threats of enforcement against them, and they could not "identify a single person" who had ever been arrested under the challenged law "while not engaged in another crime.") Plaintiff's "imaginary" and "speculative" conjecture is insufficient to show an actual "impending" and "credible" threat of prosecution, and so he lacks standing. *Knife Rights, Inc.*, 802 F.3d at 384.

16

"If a plaintiff fails to establish standing, the court 'need not address the factors to be considered in deciding whether to award a preliminary injunction' and should instead deny the motion and dismiss the case for lack of subject matter jurisdiction." *Do No Harm v. Pfizer Inc*., No. 1:22-CV-07908 (JLR), 2022 WL 17740157, at *6 (S.D.N.Y. Dec. 16, 2022) (quoting *Rojas v. Cigna Health & Life Ins. Co*., 793 F.3d 253, 259 (2d Cir. 2015)). When a complaint is "dismissed for lack of Article III standing, the dismissal must be without prejudice." *Holve v. McCormick & Co., Inc*., 334 F. Supp. 3d 535, 545 (W.D.N.Y. 2018).[7]

## V.    Conclusion

The motion to dismiss is GRANTED, and the case is dismissed without prejudice; because the Plaintiff lacks standing, the motion for preliminary injunction is DENIED for lack of subject matter jurisdiction.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of July, 2023

---

[7] In *Antonyuk I,* the district court chose to address in "judicial dictum" the merits of the preliminary injunction motion "out of an abundance of caution, because at least a conceivable chance exists that Plaintiffs may take an immediate appeal of this Decision and Order to the Second Circuit and be found to, in fact, possess standing, in which case what follows would constitute the Court's holding." *Antonyuk I* at *25. However, because "[b]oth the Supreme Court and Second Circuit have held that a lack of standing deprives the Court of subject-matter jurisdiction," *Antonyuk I* at *23, the Court's view is that it is required to dismiss this case rather than preemptively address the merits.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

DAVID NASTRI,

    *Plaintiff,*

    *v.*

KATIE DYKES, Commissioner for the Department
of Energy and Environmental Preservation,

    *Defendant.*

Civil No. 3:23-cv-0056 (JBA)

August 16, 2023

---

## RULING ON PLAINTIFF'S MOTIONS FOR RECONSIDERATION

Plaintiff moves for reconsideration [Doc. # 49] of this Court's order dismissing the case for lack of standing, arguing that the Defendant and the Court did not make clear that the issue of whether there was a credible threat of prosecution was at issue, and as a result, he failed to submit evidence he now asks the Court to consider. (*See* Pl.'s Mem. in Support of Mot. to Recon. [Doc. # 50].) Plaintiff's proposed evidence is Defendant's response to his interrogatories regarding DEEP's recorded enforcement of the Challenged Regulation.[1] Defendant opposes, arguing that the Court lacks jurisdiction to consider the motion, that the evidence is not appropriate for consideration because Defendant did not have the opportunity to address it at the evidentiary hearing, and that it would not have changed the outcome of the motion. (Def.'s Object. to Pl.'s Mot. to Recon [Doc. # 54].)

---

[1] Specifically, the evidence responds to Interrogatory # 18, which sought the number of times "DEEP has arrested or cited someone for a violation" of the Challenged Regulation "since January 1, 2013" (Pl.'s Mot. to Recon., Exhibit A, Def.'s Answers to Pl.'s Interrogatories [Doc. # 50-1] at 11.) Defendant objected to the interrogatory on multiple grounds, but provided the information "[s]ubject to and without waiving objection." *Id.* at 12. The format of the data was a two-column chart showing the year and the number of times that the Challenged Regulation was enforced, and provided no further information on its source.

For the reasons set forth below, Plaintiff's motion is DENIED.

## I.    Background

The Court assumes familiarity with the facts and procedural background of this case. Relevant to this motion, Defendant filed a motion to dismiss [Doc. # 20] on March 30, 2023 based solely on the grounds that Plaintiff did not plausibly allege the various requirements necessary to establish pre-enforcement standing under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). In her motion to dismiss, Defendant noted that "Plaintiff does not allege that he has ever been arrested, fined, evicted, or subject to any other adverse action for carrying handgun in a state park or forest, or that the State has threatened to take any such action against him." (Def.'s Mot. to Dismiss at 2.) Defendant acknowledged that "[w]hen an individual is subject to such a threat [of enforcement], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law," *Driehaus,* 574 U.S. at 158-159, so long as the plaintiff has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder[.]" *Id.* at 159. Defendant further noted that the "threat of future enforcement must also be 'sufficiently imminent.'" (Def.'s Mot. to Dismiss at 4) (quoting *Driehaus*, 574 U.S. at 59).

In his opposition, Plaintiff argued that "[i]f he violates the law, he will face punishment. Thus, the Court should find that he has plausibly alleged a particularized injury," and supported that argument with examples of the penalties and consequences he could face for violating the Challenged Regulation. (Pl.'s Opp'n to Mot. to Dismiss [Doc. # 27] at 7.) In her reply, Defendant reemphasized the need for Plaintiff to demonstrate a credible threat of enforcement for violating the Challenged Regulation, asserting that "Plaintiff cannot establish concrete intent *or a credible threat of prosecution*" (Def.'s MTD Reply [Doc. # 33] at 6) (emphasis added), discussing several supporting cases. (*See id.* at 6-7.) The Court

informed the parties in advance via email that it would be hearing argument on the issue of standing at the scheduled preliminary injunction hearing; both parties, as well as the Court, asked questions of the witnesses regarding whether and how often the Challenged Regulation was enforced.

The Court issued its ruling dismissing the case for lack of standing on July 12, 2023 [Doc. # 46]. Plaintiff filed a notice of appeal with the Second Circuit on July 12, 2023 and filed a motion to reconsider the order of dismissal on July 17, 2023; the Second Circuit issued an order holding the appeal in abeyance until the resolution of this motion.

## II.    Legal Standard

 "The major grounds justifying reconsideration" under both Second Circuit precedent and D. Conn. Loc. R. 7(c) "are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790.) "A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made," *Caires v. Adams,* No. 3:17-CV-1993(AWT), 2019 WL 8807865, at *1 (D. Conn. Apr. 23, 2019),[2] nor to "advance new facts, issues or arguments not previously presented before the [c]ourt." *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001). The standard for granting a motion for reconsideration is "strict," *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995), and a motion for reconsideration is not "a vehicle for relitigating old issues," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012).

---

[2] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

### III.    Discussion

### A.    Jurisdiction

"A federal district court and a federal court of appeals should not assert jurisdiction over a case simultaneously." *Rich v. Associated Brands, Inc.*, No. 08-CV-666S, 2009 WL 236055, at *1 (W.D.N.Y. Jan. 30, 2009). A timely motion for reconsideration "renders an otherwise final decision of a district court not final for purposes of appeal." *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 (2019). "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982).

Defendant asserts that this Court lacks jurisdiction to consider the motion to reconsider because Plaintiff has already filed a notice of appeal. (Def.'s Object. at 2.) In *Miller v. Superintendent of the Shawangunk Corr. Facility*, No. 18-CV-1762 (RA), 2020 U.S. Dist. LEXIS 198711, at *2 (S.D.N.Y. Oct. 26, 2020), the district court dismissed a motion for reconsideration for lack of jurisdiction because "[a]lthough a district court may retain jurisdiction over a motion for reconsideration that is filed *before* a notice of appeal, here, where the motion for reconsideration was filed four days *after* the notice of appeal, that rule does not apply," based on the general rule that a "federal district court and a federal appellate court may not maintain simultaneous jurisdiction over a case." *Id.*

However, because the Second Circuit is holding the appeal in abeyance pending this ruling, there is no simultaneous assertion of jurisdiction; the Second Circuit will not rule on the judgment until it is final following the Court's ruling on this motion. Further, the Second Circuit has recognized that "[t]he divestiture of jurisdiction rule is . . . not a per se rule. . . its application is guided by concerns of efficiency and is not automatic." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir.1996). Following *Rodger's* guidance, one district court has

determined that it was appropriate to issue "clarification to aid the appeal process and to serve the interests of judicial economy" even when motion for clarification of the judgment in the case was filed after the notice of appeal had already been filed. *In re M/V DG HARMONY*, No. 98 CIV. 8394 (DC), 2007 WL 895251, at *2 (S.D.N.Y. Mar. 16, 2007).

Because the Second Circuit has held the appeal in abeyance pending resolution of this motion rather than asserting exclusive jurisdiction over Plaintiff's appeal, the Court concludes that as in *In re M/V DG HARMONY*, it is appropriate to consider the merits of Plaintiff's motion for reconsideration and that it retains the jurisdiction to do so.

### B.    Merits

Plaintiff seeks reconsideration on the basis that "the Defendant never raised a claim that it did not enforce the law or that Nastri had not alleged a credible threat of prosecution," and that he "fairly relied on the parties' framing", which "led him to reasonably believe that the issue of whether he faced a credible threat of prosecution based on the Defendant's record of enforcing the law was not in dispute." (Pl.'s Mem. at 2-3.) Plaintiff acknowledges that the Court may take up the issue of standing *sua sponte,* but he submits that if he had known the credible threat of prosecution was disputed, he would have introduced interrogatory responses from Defendant showing that "the number of times that [DEEP] enforced" the Challenged Regulation was between 1 and 10 per year between 2016 and 2022. (*Id.* at 2, 5.) In Plaintiff's view, these statistics "weigh in favor of the Court revisiting its finding" that there was no credible threat of prosecution, and failure to consider this evidence would be a "manifest" injustice. (*Id.* at 2, 4.) Defendant maintains that the Court should decline to consider the evidence because it was available at the time the substantive motion was decided, and because it was not offered, Defendant was given no  opportunity to challenge its admissibility or offer arguments as to its weight; even if considered, however, Defendant argues that the evidence is consistent with testimony that the regulation was only

rarely enforced, and does not rise to the level of establishing a credible threat of prosecution sufficient to demonstrate standing. (Def.'s Opp'n at 1.)

Plaintiff's position that the lack of a credible threat of prosecution was not raised by Defendant, and that the Court's ruling was a manifest injustice because it dismissed the case *sua sponte* based without giving Plaintiff a chance to be fully heard on that issue, is without merit. "Plaintiffs bear the burden of alleging facts that demonstrate standing," *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 CIV. 2437 (RJS), 2012 WL 13065889, at *2 (S.D.N.Y. Feb. 3, 2012), and Defendant's motion to dismiss put Plaintiff on notice that she was challenging the complaint's sufficiency as to his pre-enforcement standing claim. The Court recognizes that Defendant's motion to dismiss focused more attention on whether Plaintiff's intention to engage in the proscribed conduct was sufficiently concrete, and whether he planned to visit state parks and forests in the immediate future, than on the issue of credible threat of prosecution. However, both of those questions are inherently tied to the question of whether a credible and imminent threat of enforcement existed under the *Driehaus* test. The core premise of pre-enforcement challenges, which are exceptions to the general rule that a plaintiff must already have suffered an injury to have standing, is that a plaintiff need not actually commit an illegal act and wait until what he believes is an unlawful regulation or statute is enforced against him to challenge it if—and *only* if—he would be in real danger of having the law enforced against him were he to engage in that conduct. *See Driehaus*, 573 U.S. at 159 ("[W]e have permitted pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent").

The record demonstrates that Plaintiff recognized the need to show a credible threat of enforcement. His briefing acknowledges that the need to show that a threatened injury is "*certainly impending*" under *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013), "largely aligns" with the "concreteness requirement of a 'credible threat of prosecution'"

6

(Pl.'s MTD Opp'n at 5) (quoting *Driehaus,* 573 U.S. at 159). The Court opened the hearing by reminding counsel that "standing is jurisdictional and therefore required to be established." (Prelim. Inj. Day 1 Hrg. Tr. [Doc. # 37] at 10.) In addition to numerous questions about the potential threat of enforcement from Defendant's counsel, the Court also questioned Plaintiff on whether he was aware of anyone who had had the regulation enforced against him, to which he replied he was not. (Prelim. Inj. Day 2 Hrg. Tr. [Doc. # 44] at 238.) In closing statements, Plaintiff's counsel analogized his case to *Steffel v. Thompson*, arguing that in both cases, "a cessation or ceasing of desired conduct *based on a threat of prosecution*" should be sufficient to confer standing. (*Id.* at 355) (emphasis added). Counsel directly acknowledged the question as to whether there was a credible threat of prosecution:

> We recognize that nobody -- there's no testimony to the effect that Mr. Nastri was approached by a police officer or an EnCon officer saying if you carry a handgun in state parks, we're going to prosecute you, but the statute itself, the accompanying counts of the regulation itself, the accompanying consequences of that regulation are sufficient notice to Mr. Nastri that he does face a threat of prosecution if he carries his handgun into a state park or forest in violation of that regulation.

(*Id.* at 355.)

In sum, Plaintiff's argument that he was taken aback by the inclusion of the issue of enforcement of the Challenged Regulation is not a reasonable one, nor is it "manifest injustice" to reject it. Evidence that "was known and available" to Plaintiff when the opposition was filed "cannot be the basis for a successful motion for reconsideration," nor is it evidence of manifest injustice—instead, it demonstrates only that Plaintiff had evidence that he may have strategically determined was not necessary, and that he now regrets his choice.[3] *Gladstein v. Goldfield*, No. 3:18-CV-0926 (VAB), 2021 WL 1049898, at *5 (D. Conn.

---

[3] The Court also notes that the complaint was dismissed without prejudice, as required for a dismissal for lack of standing, leaving Plaintiff with the option of seeking to file an amended complaint incorporating the additional facts he now marshals.

Mar. 19, 2021). A chance to relitigate an issue under a different strategy or with different evidence is instead exactly the sort of "second bite at the apple" that makes reconsideration inappropriate. *Analytical Survs., Inc.*, 684 F.3d at 52. Motions for reconsideration "are not to be used as a means to reargue matters already disposed of by prior rulings or to put forward additional arguments that could have been raised prior to the decision," *Rich*, 2009 WL 236055, at *1, and "shall be granted only if the court has overlooked controlling decisions or factual matters *that were put before it on the underlying motion* and which, had they been considered, might have reasonably altered the result before the court," *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 500 (S.D.N.Y. 2008) (emphasis added).[4]

## IV.   Conclusion

Plaintiffs' motion for reconsideration is DENIED. The Clerk is directed to notify the Second Circuit that a decision has been issued on the motion and to close this case.

---

[4] Plaintiff cites no cases in which the court granted a motion to reconsider premised on evidence available at the time the substantive motion was decided. The Court located one case in which a district court considered evidence newly brought to its attention despite there being "no legitimate reason" why it was not cited to or proffered during the substantive briefing on the issue, but only because it was "unambiguous" and definitively settled the legal question, leading the court to reconsider and dismiss the claims in question "for the sake of judicial efficiency." *Fund Liquidation Holdings LLC v. UBS AG*, No. 15 CIV. 5844 (GBD), 2022 WL 3904556, at *4 (S.D.N.Y. Aug. 30, 2022). Here, the evidence does not unambiguously decide the question of standing but would instead require the Court to resolve the objection to the admissibility of the produced information, reopen the hearing, and conduct further legal analysis on whether the evidence is sufficient to confer standing; *Fund Liquidation Holdings LLC* is thus distinguishable.

IT IS SO ORDERED.

              /s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of August, 2023

**ADDENDUM B**

**Preliminary Statement of the Issues**

**I.    Whether the district court erred by dismissing Nastri's claims and denying his motion for a preliminary injunction for lack of standing.**

The standard of review is de novo. *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148-49 (2d Cir 2007).

**II.   Whether the district court erred by denying Nastri's motion for reconsideration.**

The standard of review is abuse of discretion. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 435 (2d Cir. 2011).