# 23-1023

**IN UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

————————

DAVID J. NASTRI, ESQ.

*Plaintiff-Appellant*

v.

KATIE DYKES,

*Defendant-Appellee,*

————————

On Appeal from the United States District Court for the
Connecticut, No. 3:23-cv-00056-JBA

————————

**BRIEF OF THE PLAINTIFFS-APPELLANTS**

————————

Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchfield Rd.
P.O. Box 340
Harwinton, CT 06791
Tel: (203) 677-0782
Fax: (203) 672-6551
catkinson@atkinsonlawfirm.com

*Attorney for Plaintiff-Appellant*

October 26, 2023

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ................................................................................... 1

JURISDICTION....................................................................................... 3

STATEMENT OF THE ISSUES................................................................ 3

STATEMENT OF THE CASE.................................................................. 3

   I.   Background................................................................................... 4

     A.  Connecticut's ban on carrying firearms in state parks and forests. ..............4

     B.  David J. Nastri, Esq.................................................................... 6

   II.   Procedural History And The Decision Below................................. 7

SUMMARY OF THE ARGUMENT ....................................................... 9

ARGUMENT ....................................................................................... 12

   I.   The District Court Erred By Dismissing Nastri's Case And Denying His Motion For A Preliminary Injunction For Lack Of Standing.............................. 12

     A.  Standard of review..................................................................... 12

     B.  The district court's dismissal of Nastri's case based on standing issues that it raised *sua sponte* without giving him adequate notice and a fair opportunity to

meet those issues is sufficient grounds for reversal under the Court's precedents. ..................................................................................................12

C. The district court's decision misconstrues the record before it and ignores critical facts that establish Nastri's standing. ....................................................15

D. In the alternative, the "chilling" nature of Conn. Agencies Regs. § 23-4-1(c) on Nastri's constitutionally protected conduct supplies Nastri with an "actual or imminent" injury to pursue his Second Amendment claims. ............................26

II. The District Court Abused Its Discretion By Denying Nastri's Motion For Reconsideration Because It *Sua Sponte* Raised An Issue Pertaining To Standing That The Parties Did Not And Denied Nastri A Chance To Meet It. ..................30

A. Standard of review..........................................................................................30

B. The district court denied Nastri with adequate notice and a fair opportunity to be heard by denying his motion for reconsideration after it *sua sponte* raised whether he had made a sufficient showing of past enforcement to establish a credible threat of prosecution. ..........................................................................31

CONCLUSION.....................................................................................................37

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION ..................................................................................................................39

CERTIFICATE OF SERVICE .............................................................................40

ii

# TABLE OF AUTHORITIES

## Cases

*Babbit v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) .................. 17, 28

*Barilla v. City of Houston, Texas*, 13 F.4th 427 (5th Cir. 2021) .............................27

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016).................................... 15, 23

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed*

   *Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005) ..................................................... 12, 32

*Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2013)............................................. 27, 28

*Doe v. Bolton*, 410 U.S. 179 (1973).........................................................................17

*Epperson v. Arkansas*, 393 U.S. 97 (1968)....................................................... 17, 21

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................................18

*Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990 (9th Cir. 2010).........28

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015).......................................16

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011).........................30

*Lewis v. New York*, 547 F.2d 4 (2d Cir. 1976).................................................. 13, 32

*Lujan v. Defenders of Wildlife*, 504 U.S. 55 (1992) ................................... 14, 16, 26

*McGinty v. New York*, 251 F.3d 84 (2d Cir. 2001) ..................................... 13, 32, 37

*Meese v. Keene*, 481 U.S. 465 (1987)....................................................................27

*Nastri v. Dykes*, 2023 WL 4491621 (D.Conn. Jul. 12, 2023)...................................4

*Nastri v. Dykes*, 2023 WL 5276396 (Aug. 16, 2023) ................................................4

*National Rifle Ass'n of America v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ..............27

*New Hampshire Right To Life Political Action Committee v. Gardner*, 99 F.3d 8

    (1st Cir. 1996) ................................................................................................27

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022) .....

    .............................................................................................................. 28, 29

*Poe v. Ullman*, 367 U.S. 497 (1961) ......................................................................17

*Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79 (2d Cir. 2014) .................12

*Republican Party of Minn., Third Congressional Dist. v. Klobuchar*, 381 F.3d 785

    (8th Cir. 2004) ................................................................................................28

*Stratford Police Dept. v. Bd. of Firearms Permit Examiners*, 343 Conn. 62 (2022) 5

*Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65 (2d Cir. 2019) ...................16

*United States v. Sineneng-Smith*, 140 S.Ct. 1575 (2020) ................................. 12, 32

*Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245 (2d Cir.

    1992) ...............................................................................................................31

*Virgina v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988) ........................26

*Vitagliano v. County of Westchester*, 71 F.4th 130 (2d Cir. 2023)........ 16, 17, 26, 33

*Wilson v. Stocker*, 819 F.2d 943 (10th Cir. 1987)....................................................28

**Statutes**

28 U.S.C. § 1291 ........................................................................................................3

28 U.S.C. § 1292 ..................................................................................3

28 U.S.C. § 1331 ..................................................................................3

42 U.S.C. § 1983 ..................................................................................3

Conn. Gen. Stat. § 23-4 .......................................................................5

Conn. Gen. Stat. § 29-28 .....................................................................5

Conn. Gen. Stat. § 29-32 .....................................................................5

Conn. Gen. Stat. § 51-164n ..................................................................5

Conn. Gen. Stat. § 53a-109 ..................................................................5

**Other Authorities**

Conn. Agencies Regs. § 23-4-1  4, 5, 8, 14, 15, 18, 20, 21, 22, 26, 29, 30, 34, 35, 36

Conn. Agencies Regs. § 23-4-5 ............................................................4

Conn. Pub. Act No. 23-53 ....................................................................24

**INTRODUCTION**

Connecticut prohibits the carrying of firearms in its state parks and forests for any purpose other than hunting certain species of small game. Anyone who violates this prohibition will incur administrative fines, eviction from state parks and forests, a year-long ban from state parks and forests, potential criminal charges, and the potential loss of any Connecticut firearms permits. The Plaintiff-Appellant – David J. Nastri, Esq. – brought the underlying pre-enforcement action claiming that the prohibition violates his Second Amendment right to carry his handgun for purposes of self-defense in state parks and forests. The district court denied Nastri's motion for a preliminary injunction and dismissed his complaint for lack of standing after a two-day hearing.

No precedent supports the district court's *sua sponte* findings that Nastri lacked standing. The chief of Connecticut's Environmental Protection Police – Colonel Chris Lewis – testified that Connecticut still trains his officers to enforce the prohibition. He further testified that his officers regularly respond to calls regarding unauthorized firearms in Connecticut state parks and forests. Finally, he testified that, if his officers caught an individual – including Nastri – violating the prohibition, they would take enforcement action against him.

Despite Lewis' testimony, the district court found that Nastri lacked standing because he did not show that Connecticut had enforced the prohibition against

1

anyone. It characterized Connecticut's law as a moribund law, and it held that he had failed to show a credible threat of prosecution or enforcement due to his inability to supply examples of enforcement. The district court then denied Nastri's motion for reconsideration in which he submitted Appellee Katie Dykes' interrogatory responses showing numerous instances of enforcement over the preceding five years.

The district court's decision breaks sharply from this Court's precedents as well as Supreme Court precedent by requiring Nastri to show a past record of enforcement in addition to clear testimony from state officials threatening to enforce the law. By doing so *sua sponte* at the motion to dismiss state, the district court imposed a unique, evidence-based pleading standard on Nastri with respect to standing and then slammed the door on his attempt to catch up with the goalposts that it just moved.

It is almost impossible to undersell the predicament that the district court's ruling places Nastri in. He must violate Connecticut law and risk the permanent loss of his Second Amendment rights prior to receiving a hearing on whether the law violates his Second Amendment rights. The law does not require Nastri to do that though, and the Court should reverse the district court and allow Nastri to litigate the merits of his Second Amendment challenge.

## JURISDICTION

This is an appeal from a district court's denial of a preliminary injunction and dismissal of a civil action arising in the United States District Court for District of Connecticut on July 12, 2023 and its denial of reconsideration on August 16, 2023. App.209 *and* App.254. The Court has appellate jurisdiction over the dismissal of the action under 28 U.S.C. § 1291 and over the denial of the preliminary injunction under 28 U.S.C. § 1292. The district court had federal question jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983. The Appellants timely filed their notice of appeal on July 12, 2023 and their amended notice of appeal on August 28, 2023. App.226 *and* App.264.

## STATEMENT OF THE ISSUES

I.   Whether The District Court Erred by Dismissing Nastri's Claims And Denying His Motion For A Preliminary Injunction For Lack Of Standing.

II.  Whether The District Court Erred by Denying Nastri's Motion for Reconsideration.

## STATEMENT OF THE CASE

In this case, Plaintiff-Appellant David J. Nastri, Esq. sought declaratory and injunctive relief against Katie Dykes, the Commissioner of Connecticut Department of Energy and Environmental Protection (DEEP), for her enforcement of Connecticut's prohibition on carrying firearms in state parks and forests for any

3

other purpose other than hunting certain species of small game. Nastri filed the underlying action in the United States District Court for the District of Connecticut on January 14, 2023. App.266-67. Judge Janet Bond Arterton granted Dykes' motion to dismiss the lawsuit in its entirety and denied Nastri's motion for a preliminary injunction in a written decision issued on July 12, 2023. *See Nastri v. Dykes*, 2023 WL 4491621 (D.Conn. Jul. 12, 2023). Judge Arterton subsequently denied Nastri's motion for reconsideration in a written decision issued on August 16, 2023. *See Nastri v. Dykes*, 2023 WL 5276396 (Aug. 16, 2023). This appeal followed.

## I. Background.

### A. Connecticut's ban on carrying firearms in state parks and forests.

Connecticut prohibits the carrying of firearms or other weapons in state parks and forests:

> Hunting or carrying of firearms, archery equipment or other weapons, including but not limited to air rifles and slingshots, is not permitted in any state park or forest except as authorized by the Department of Energy and Environmental Protection. All carrying or use of weapons is subject to applicable provisions of the Connecticut General Statutes and regulations adopted thereunder.

Conn. Agencies Regs. § 23-4-1 (c).

If a person violates this regulation, they face two types of direct punishment. First, the DEEP may fine a person up to $35. Conn. Agencies Regs. § 23-4-5. Second, the DEEP possesses the authority to arrest and evict a violator from a park or a forest for up to twenty-four hours immediately upon their arrest or citation for

the infraction. *Id*. If a person is convicted of violating Conn. Agencies Regs. § 23-4-1(c) under the procedures established in Conn. Gen. Stat. § 51-164n, Defendant Dykes retains the authority to ban the convicted violator from entering a state park or forest for up to one year. Conn. Gen. Stat. § 23-4.

A violator could also face collateral consequences. First, a violator could face a criminal trespass charge under Conn. Gen. Stat. § 53a-109 for entering public land in a manner that they are not licensed or privileged to do so. Second, a violator could face the revocation of their Connecticut pistol permit under Connecticut's "suitability"[1] inquiry. *See* Conn. Gen. Stat. § 29-32(b) (authorizing the Commissioner of Emergency Services and Public Protection to revoke pistol permits upon the "occurrence of any event which would have disqualified the holder from being issued the state permit…") *and* Conn. Gen. Stat. § 29-28(b) (requiring an assessment of whether a person is "a suitable person" to receive a pistol permit).

This ban on firearms and other weapons in state parks is porous and selective though. Connecticut permits hunting with firearms in its state parks year-round. It

---

[1] A suitable person is a person "who by reason of his character – his reputation in the community, his previous conduct as a licensee – is shown to be suited or adapted to the orderly conduct of a business which the law regards as so dangerous to public welfare that its transaction by any other than a carefully selected person duly licensed is made a criminal offense." *Stratford Police Dept. v. Bd. of Firearms Permit Examiners*, 343 Conn. 62, 82 (2022) (internal quotation marks and citations omitted).

permits hunters to use .22 caliber rimfire handguns to hunt small game. App.172 (p. 277 of hearing transcript).

**B. David J. Nastri, Esq.**

David J. Nastri is a combat veteran, a financial advisor, an attorney, and an active participant in his community. App.6. He earned a Master's in Business Administration (M.B.A.) in 2001 from Quinnipiac University and obtained his law degree from Quinnipiac in 2018. App.7. He is also a licensed financial advisor, holding multiple FINRA licenses. App.7. He currently holds both his law license and his FINRA licenses in good standing. App.7.

Nastri has held a Connecticut pistol permit for approximately 30 years, and he completed all of the safety training associated with obtaining it. App.7. He also received comprehensive training from the United States Army during his military service on the safe and effective use of firearms, including handguns, and he was required to demonstrate proficiency in their safe and effective use under combat conditions. App.6-7.

Nastri uses Connecticut state parks and forests on a regular basis throughout the year. App.7. He hikes with his girlfriend at Sleeping Giant State Park in Hamden, Connecticut and Naugatuck State Forest when they have time. App.7. He intends to continue his usage of Connecticut state parks and forests in the immediate and

foreseeable future for the same purpose, and he seeks to carry a handgun at those times for the purpose of self-defense. App.8-9.

## II.    Procedural History And The Decision Below.

Nastri filed the underlying action on January 14, 2023. App.266. On January 17, 2023, he moved for a temporary restraining order and a preliminary injunction. App.267. At a January 27, 2023 status conference, the district court (Arterton, J.) denied Nastri's motion for a temporary restraining order and set an expedited schedule to consider Nastri's motion for a preliminary injunction. App.267-68. Nastri then filed an amended complaint and an amended motion for a preliminary injunction. App.267-68.

Defendant Dykes then filed a motion to dismiss on March 30, 2023 and her opposition papers to Nastri's amended motion for a preliminary injunction. App.268. The parties then engaged in approximately 2 months of discovery under the Court's scheduling order, and the district court then convened an evidentiary hearing on May 9 and 10, 2023. App.269.

On July 12, 2023, the district court (Arterton, J.) granted Dykes' motion to dismiss on the grounds that Nastri lacked standing to pursue his claims and denied his amended motion for a preliminary injunction on that same basis. App.209. Nastri immediately filed a notice of appeal. App.226. Nastri subsequently filed a motion for reconsideration on July 17, 2023. App.228. The district court denied that motion

7

on August 16, 2023. App.254. Nastri then amended his notice of appeal on August 28, 2023 to include the denial of his motion for reconsideration. App.264.

The district court found that Nastri lacked standing because he had failed to show a credible threat of prosecution for a violation of Conn. Agencies Regs. § 23-4-1(c).[2] App.224. It made five evidentiary findings:

> The evidence in the record shows that (1) Plaintiff has never encountered an EnCon officer while in a state park or forest; (2) the chances of encountering an EnCon officer are rare due to staffing challenges; (3) EnCon officers do not randomly search park patrons for firearms; (4) Plaintiff testified no one has noticed him carrying a concealed firearm in the last year, (Pl.'s Dep. Tr. at 142-43); and (5) Plaintiff was never stopped and ticketed during the period he was unknowingly carrying his firearm in state parks and forests in violation of the regulation.

App.224.

From these findings, it concluded that Nastri's theory of standing was "imaginary" and "speculative" and based on a "highly attenuated chain of possibilities." App.224.

With respect to the denial of Nastri's motion for reconsideration, the district court acknowledged that it *sua sponte* addressed the credible threat of prosecution factor: "The Court recognizes that Defendant's motion to dismiss focused more

---

[2] The district court did find that Nastri had met the other requirements for establishing standing: (1) that he intended to engage in a course of conduct that was affected with a constitutional interest and (2) that Conn. Agencies Regs. § 23-4-1(c) prohibited him from doing so. App. 218-19.

attention on whether Plaintiff's intention to engage in the proscribed conduct was sufficiently concrete, and whether he planned to visit state parks and forests in the immediate future, than on the issue of credible threat of prosecution." App.259. It, however, held that Nastri should have been aware that he needed to present evidence on the issue and declined to consider the evidence that Defendant Dykes supplied in her interrogatory responses. App.259-61.

## SUMMARY OF THE ARGUMENT

The district court erred by dismissing Nastri's case and denying his motion for a preliminary injunction for lack of standing. In direct contradiction to the Court's well-established command in *McGinty v. New York*, the district court *sua sponte* raised the issue of whether Nastri had demonstrated a credible threat of prosecution by showing sufficient examples of enforcement of Connecticut's agency regulation prohibiting the carrying of firearms in Connecticut state parks and forests. The parties never disputed that issue in their briefing papers, and the attention that they gave to the standing issue at the two-day evidentiary hearing on Nastri's preliminary injunction addressed the issues that Dykes raised in her motion to dismiss for lack of standing. The district court's *sua sponte* raising and decision on the credible threat of prosecution element of Nastri's standing deprived him of adequate notice and a fair opportunity to meet the issue, and the district court

overlooked evidence that actually clearly demonstrates his standing. Reversal is thus warranted under *McGinty* on this basis alone.

Even assuming that the district court did not err on this point, it also erroneously concluded that Connecticut's regulation was moribund despite express avowals in testimony from the chief law enforcement officer in charge of enforcing it that he and his officers would continue to enforce it. The district court also ignored the officer's description of how his department actively attempts to enforce the law. Based on these errors and omissions, the district court incorrectly concluded that Nastri's fear of criminal prosecution was imaginary and speculative because he had not demonstrated that Connecticut was successful in catching violators of the law and enforcing the law against them. Neither this Court's precedent nor Supreme Court precedent imposes a burden on plaintiffs to prove successful enforcement of a law. Thus, reversal is warranted.

In the alternative, the district court did not consider whether Nastri demonstrated an actual injury. He did. Traditional prudential standing requirements relax in First Amendment cases where a plaintiff demonstrates that a law has a chilling effect on their speech. The Supreme Court emphasized in *New York State Rifle & Pistol Association, Inc. v. Bruen* that Second Amendment analyses should be consistent with First Amendment analyses. Nothing in its precedents permitted the district court to make an implicit value judgment that the right to free speech is

10

deserving of more leniency in standing analysis than the right to bear arms. Nastri demonstrates that the Connecticut regulation and Connecticut officials' express avowals to continue to enforce the law have chilled his exercise of his right to bear arms in Connecticut state parks and forests because he reasonably fears the consequences of violating the law. That is sufficient to confer standing on Nastri, and the Court should reverse the district court's finding that Nastri lacked standing.

Finally, the district court erred by denying Nastri's motion for reconsideration because its *sua sponte* dismissal of Nastri's case based on standing issues that the party did not raise worked a manifest injustice by denying Nastri fair notice and a fair opportunity to be heard. Nastri submitted enforcement statistics as part of his motion for reconsideration demonstrating that Connecticut was actually enforcing its prohibition against the carrying of firearms in state parks and forests. The district court refused to consider that evidence because it claimed Nastri should have presented it earlier. Nastri did not present it earlier because he was not fairly apprised that it was at issue in the case, and the district court trampled roughshod over his due process rights to adequate notice and a fair opportunity to be heard. Reversal is warranted to vindicate Nastri's due process rights and permit him to present the evidence that establishes standing in the face of the issue that the district court *sua sponte* raised.

# **ARGUMENT**

I.    **The District Court Erred By Dismissing Nastri's Case And Denying His Motion For A Preliminary Injunction For Lack Of Standing.**

   A. **Standard of review.**

   A district court's decision to dismiss a complaint for lack of standing is reviewed *de novo* insofar as it is based "on the allegations of the complaint and the undisputed facts evidenced in the record." *Rajamin v. Deutsche Bank Nat. Trust Co.*, 757 F.3d 79, 84-85 (2d Cir. 2014). If the district court resolves disputed facts in ruling on standing, the Court accepts its factual findings unless they are clearly erroneous. *Id*. at 85.

   B. **The district court's dismissal of Nastri's case based on standing issues that it raised *sua sponte* without giving him adequate notice and a fair opportunity to meet those issues is sufficient grounds for reversal under the Court's precedents.**

   As a general rule, courts follow the principle of party presentation. *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020). Under that principle, courts themselves must rely on the parties to frame issues for decision although they retain a modest initiating role. *Id*. A well-recognized exception to this rule is the power of courts to *sua sponte* raise and address questions of subject matter jurisdiction, including standing. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

This power has limitations though. "A district court should not dismiss an action pending before it without first providing the adversely affected party with notice and an opportunity to be heard." *McGinty v. New York*, 251 F.3d 84, 90 (2d. Cir. 2001). This rule serves several important purposes. First, "[i]t gives the adversely affected party a chance to develop the record to show why dismissal is improper…." *Id*. Second, "it facilitates *de novo* review of legal conclusions by ensuring the presence of a fully-developed record before an appellate court…." *Id*. Third, "it helps the trial court avoid the risk that it may have overlooked valid answers to what it perceives as defects in plaintiff's case…." *Id*.

"[A] *sua sponte* dismissal absent notice and an opportunity to be heard can itself be grounds for reversal…." *Id*. (citing *Lewis v. New York*, 547 F.2d 4, 5-6 & n.4 (2d Cir. 1976)).

At the outset, the district court's decision recognized that Defendant Dykes did not raise the issue of a credible threat of prosecution with respect to past enforcement statistics: "The Court recognizes that Defendant's motion to dismiss focused more attention on whether Plaintiff's intention to engage in the proscribed conduct was sufficiently concrete, and whether he planned to visit state parks and forests in the immediate future, than on the issue of credible threat of prosecution." App.259. Despite this language, the district court opined that Dykes' focus on whether Nastri intended to engage in proscribed conduct and whether he planned to

13

visit state parks and forests in the future was so inherently tied to whether the threat of enforcement was credible and imminent as to place him on notice of his burden to present past enforcement statistics. App.259-61.

The district court, however, grossly understated the nature of the parties' presentation. Dykes only raised two contentions in her motion to dismiss for lack of standing. First, she claimed that Nastri did not allege that he actually intended to carry a handgun into state parks and forests. App.98. Second, she argued that he did not plausibly allege his intention to do so in the immediate future. App.98. The first argument goes to the first prong of the pre-enforcement standing test: "an intention to engage in a course of conduct arguably affected with a constitutional interest…" even though the district court held that it falls under the credible threat of enforcement prong. *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023). The second argument also falls under the first prong – a fact that Dykes herself recognized by relying heavily on *Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560 (1992) for her arguments on that front.

Nothing in Dykes' motion to dismiss fairly apprised Nastri that Dykes disputed whether EnCon has enforced Conn. Agencies Regs. § 23-4-1(c). Nastri relied on the matters raised by the parties to respect the two-day hearing schedule that the parties and the district court agreed upon for the presentation of his case, and he tailored his evidentiary presentation to that schedule. It was only when the district

14

court based its dismissal of his case on the alleged lack of enforcement that Nastri became aware that it was considering that as a basis for the dismissal of his case.

Thus, Nastri has shown that the district court's failure to afford him an opportunity to meet the credible threat of prosecution issue that it raised *sua sponte* meets the standard for reversal under *McGinty*. The Court should reverse the district court's dismissal of Nastri's case and its denial of his motion for a preliminary injunction for lack of standing.

## C. **The district court's decision misconstrues the record before it and ignores critical facts that establish Nastri's standing.**

The district court relied heavily on the Court's decision in *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016) to place the burden on Nastri to show a government intent to enforce Conn. Agencies Regs. § 23-4-1(c) against him. App.220-222. In particular, the district court concluded that Conn. Agencies Regs. § 23-4-1(c) was moribund and held that Nastri failed to meet his burden of showing that Connecticut was enforcing the law by providing evidence of enforcement.[3] App.220-223. This conclusion directly contradicts the basic principles of standing and breaks sharply from the Court's precedents.

To establish standing in the pre-enforcement context under the Court's precedents, Nastri must satisfy a three-prong test and demonstrate "(1) an intention

---

[3] As explained in Section II, Defendant Dykes did not raise this issue, and the district court *sua sponte* raised it without giving Nastri an opportunity to rebut.

to engage in a course of conduct arguably affected with a constitutional interest; (2) that the intended conduct is proscribed by the challenged law; and (3) that there exists a credible threat of prosecution thereunder." *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (internal quotation marks and citations omitted). The district court found that Nastri had met the first two prongs, but not the third prong.

Since standing requires an imminent injury, *see Lujan v. Defenders of Wildlife*, 504 U.S. 55, 560 (1992), "[t]he identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). Courts will not find an imminent injury on this prong though if "plaintiffs do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Id*.

It is a "well-established proposition" though that "[w]here a statute specifically proscribes conduct, the law of standing does not place the burden on the plaintiff to show an intent by the government to enforce the law against it." *Vitagliano*, 71 F.4th at 138 (quoting *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019)). Instead, courts presume "such intent in the absence of a disavowal by the government or another reason to conclude that no such intent existed." *Id*. The Court, however, has qualified this presumption of intent by holding

16

that it will apply the presumption when a statute is "recent and not moribund." *Id*. at 138 (internal quotation marks and citations omitted).

The true thrust of the "recent and not moribund" rule comes from *Poe v. Ullman*, 367 U.S. 497 (1961). *Poe* held that two conditions deprive a controversy of the immediacy necessary to establish an imminent injury: (1) an express disavowal of enforcement by the state or (2) a lengthy history of non-enforcement. *Poe*, 367 U.S. at 507-508. To illustrate the nature of the second condition, *Poe* stated that Connecticut's contraception ban had, for many years, "gone uniformly and without exception unenforced."[4] *Id*. at 508. Thus, *Poe* held that the plaintiffs lacked standing.

The Supreme Court has gradually provided examples of how to apply these conditions. *Epperson v. Arkansas*, 393 U.S. 97 (1968) did not reject an Arkansas teacher's First Amendment challenge to a state statute prohibiting the teaching of evolution even though Justice Black's concurrence noted that Arkansas did not enforce the law for nearly 40 years and that its "pallid, unenthusiastic, and even apologetic defense" of the law showed that it would make no attempt to. *See Epperson*, 393 U.S. at 109-110 (Black, J., concurring) (suggesting that the teacher lack standing). *Babbit v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979)

---

[4] *Poe* presented exceptional facts as the Supreme Court later noted in *Doe v. Bolton*, 410 U.S. 179, 188 (1973): "the challenged Connecticut statute, deemed to prohibit the giving of medical advice on the use of contraceptives, had been enacted in 1879, and, apparently with a single exception, no one had ever been prosecuted under it."

17

found that the plaintiffs had standing to challenge an eight-year-old Arizona unfair labor practice law that had never been enforced and might never be enforced because Arizona had disavowed any intention of enforcing the law. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15-16 (2010) found that the plaintiffs met both conditions and had standing because the federal government did not disavow the enforcement of a criminal statute and because it had prosecuted several people under it.

The sum of these cases is that the most important factor in the "credible threat of prosecution" analysis is whether the government has disavowed an intention to enforce the law going forward.

The district court's errors in the instant case boil down to what it used as the relevant metric for its analysis of past instances of enforcement: actual citations for violations of Conn. Agencies. Regs. § 23-4-1(c) that were actually issued. App.222-23. This metric, however, minimizes Connecticut's actual efforts to consistently enforce the law as part of its normal operations.

Colonel Chris Lewis – the division director for Connecticut's Environmental Conservation Police Division (EnCon)[5] – testified that EnCon employs approximately 52, armed, law enforcement officers. App.165, (p. 248 of hearing transcript). 48 of those officers are assigned to patrol Connecticut state parks and forests. App.177, (p. 295 of hearing transcript). Since Connecticut has

---

[5] App.163 (p. 241 of hearing transcript).

approximately 139 state parks and forests, it is impossible for EnCon to assign an armed law enforcement officer to patrol every state park or forest.[6] App.166 (p. 253 of hearing transcript). Additionally, EnCon does not operate like a traditional police force, but more as a customer service force. App.178-79 (pp. 302-305 of hearing transcript).

Lewis testified that EnCon receives calls about the presence of firearms in state parks and forests. App.180 (pp. 307-08 of hearing transcript). He then testified that EnCon responds to those calls and described how it regularly responds to those calls. App.180 (pp. 307-09 of hearing transcript). Lewis' testimony indicates that EnCon dispatches a minimum of two EnCon officers to investigate calls of firearms in state parks and forests. App.180 (pp. 307-08 of hearing transcript).

Reaction to these calls can be significantly delayed. Lewis testified that a call could typically be routed from a 9-1-1 dispatch center to EnCon's dispatch center or it could come directly into EnCon's dispatch center. App.187-88 (pp. 338-40). Regardless of how delayed the response to the call was, Lewis testified that EnCon dispatchers would react as follows:

> Q. If a report came into your dispatch center saying there's somebody out in the middle of a state park carrying a firearm, do you have any knowledge of how a dispatcher would react to that report?
>    ….

---

[6] Instead, officers are assigned to patrol a set amount of state parks and forests within towns in Connecticut. App.184 (p. 325 of hearing transcript)

> A. No. So how dispatchers would react, they would categorize that as a public safety call, unknown person with a weapon, and they would start dispatching officers to it.
>
> Q. Would a dispatcher attempt to gather as much information as possible from the reporting caller?
>
> A. Yes. But they would do that with every call.
>
> Q. Okay. Are dispatchers trained to triage calls of reports?
>
> A. Yes.
>
> Q. And can you define the term "triage" for us?
>
> A. They rank them in order of importance or urgency. So less important stuff gets put on hold to deal with the more urgent calls.
>
> Q. Would they triage certain -- would they triage reports of a firearm?
>
> A. They would -- as far as triage, they would elevate that. If it's a public safety call, that goes to the top of our list.

App.188 (pp. 339-40 of hearing transcript).

In response to the district court's questions, Lewis later described what the investigating officers would do if they found a person carrying an unauthorized firearm in a Connecticut state park or forest:

> THE COURT: So you had some testimony that I'm a little unclear about. When you get calls regarding firearms, do you or do you not enforce the regulations prohibiting firearms in the parks and forests or do you only give warnings?
>
> THE WITNESS: If we find someone carrying a weapon in the state park, we typically charge them with -- if there's no other extenuating circumstances, it's the 23-4-1c charge of possession with a weapon in a state park. If there's other issues going on, we may have other charges.

App.190 (p. 348 of hearing transcript).

Lewis' testimony establishes two critical facts. First, Connecticut actively attempts to enforce Conn. Agencies Regs. § 23-4-1(c) in almost the same fashion as

20

a traditional police department enforces criminal statutes. It waits for calls regarding unauthorized firearms from the public, and it responds to those calls. Colonel Lewis' testimony emphasized that it gives the highest priority to calls reporting unauthorized firearms. Like a traditional police officer, an EnCon officer may respond too late to issue an on-site citation. Unlike traditional police officers though, an EnCon officer does not have the investigative tools such as security camera footage, readily available eyewitness descriptions, and tracking data to track down offenders. Additionally, since EnCon officers must cover large areas due to DEEP's limited resources, their response times are significantly delayed. The fact remains though that DEEP and EnCon do regularly attempt to enforce Conn. Agencies Regs. § 23-4-1(c) by giving the highest priority to reports of violations.

Second, Lewis also testified that EnCon officers do not merely give warnings for violations of Conn. Agencies Regs. § 23-4-1(c). In direct response to the district court's question, he declared that his officers would issue citations to anyone that they found violating the law. App.190 (p. 348 of hearing transcript). At no point in his testimony did Lewis ever disavow an intention to continue to enforce the law. Defendant Dykes also made no disavowal of DEEP's intent to continue to attempt to enforce Conn. Agencies Regs. § 23-4-1(c).[7]

---

[7] Defendant Dykes' defense of this case stands in stark contrast to the evidence that Justice Black highlighted in his *Epperson v. Arkansas*, 393 U.S. 97 (1968) concurrence as being probative of an intent not to enforce the law. Instead of offering

While the district court acknowledged that Lewis testified that his officers would enforce Conn. Agencies Regs. § 23-4-1(c) if they caught a violator, App.222, it completely ignored his testimony as to how EnCon regularly responds to calls regarding unauthorized firearms in Connecticut state parks and forests. The district court's disregard for Lewis' testimony regarding EnCon's efforts to enforce Conn. Agencies Regs. § 23-4-1(c) was grave error – particularly when it *sua sponte* raised the issue of whether there was a credible threat of prosecution based on how Conn. Agencies Regs. § 23-4-1(c) is enforced.

The district court also minimized the warning that Nastri got from DEEP Deputy Commissioner Mason Trumble. After Nastri learned of Conn. Agencies Regs. § 23-4-1(c)'s prohibition on carrying firearms in state parks and forests in November 2022, he reached out to Deputy Commissioner Trumble and asked if the rule had any exception for properly licensed pistol permit holders to carry firearms for self-defense in state parks and forests. App.81-82. Trumble replied by sending Nastri a link to a legislative research report prepared for the Connecticut General

---

a lackluster defense, Defendant Dykes made a mighty effort to defend this case, hiring an expert (Professor Saul Cornell) who billed $1,000 per hour for his testimony and presumably a comparable amount for his expert affidavit. She dispatched four attorneys from the Connecticut Attorney General's office, including the head of its Special Litigation division, to both days of preliminary hearing and at least one of the depositions in this matter. She submitted almost a thousand pages in historical exhibits before the district court to justify Conn. Agencies Regs. § 23-4-1(c). In sum, Connecticut's treatment of this case shows that they have every intent to continue to enforce Conn. Agencies Regs. § 23-4-1(c).

Assembly, which contained a description of the rule and the penalties for violating it with an email note saying that it would answer his questions. App.84-86.

The district court found that Trumble's response did not constitute a threat or warning to Nastri of enforcement. App.220-221. This conclusion, however, was erroneous the moment that the district court conceived of it. Trumble's response to Nastri functionally communicated the following message: "Here is the law. Here's what is going to happen to you if you violate it. Obey the law and stop bothering me." By responding to Nastri with a document containing the penalties for violating Conn. Agencies Regs. § 23-4-1, Trumble essentially communicated that Conn. Agencies Regs. § 23-4-1 was still being enforced and would be enforced going forward. Thus, his response falls sufficiently within the category "specific threats" that this Court has held may establish standing. *See Tanner*, 824 F.3d at 331.

The district court's theory of what was required to demonstrate a credible threat of prosecution also went awry on the five factual findings[8] it used as "icing

---

[8] The district court found that:

> The evidence in the record shows that (1) Plaintiff has never encountered an EnCon officer while in a state park or forest; (2) the chances of encountering an EnCon officer are rare due to staffing challenges; (3) EnCon officers do not randomly search park patrons for firearms; (4) Plaintiff testified no one has noticed him carrying a concealed firearm in the last year, (Pl.'s Dep. Tr. at 142-43); and (5) Plaintiff was never stopped and ticketed during the period he was unknowingly carrying his firearm in state parks and forests in violation of the regulation.

on the cake" of its dismissal decision. App.224. Nastri does not dispute the factual findings, but he does dispute their legal relevance as to his standing. The district court characterized these findings as demonstrating that the possibility of EnCon enforcing Conn. Agencies Regs. § 23-4-1 against Nastri was nothing more than speculation and imagination. App.224.

Its characterization of these factors sorely misses the mark. Colonel Lewis testified that carrying a firearm concealed as Nastri customarily does is not always perfect. App.183 (pp. 321-22 of hearing transcript). He explained that, as a person moves, they sometimes inadvertently reveal their firearm to bystanders. App.183-84 (pp. 322-23 of hearing transcript). He went to explain how it often happens in simple activities such as opening a door for someone. App.183-84 (pp. 322-24 of hearing transcript). Defendant Dykes offered no evidence how Nastri carrying his firearm into a state park or forest in a concealed manner would be any different from the normal revelations that Colonel Lewis testified occur in everyday life. Additionally, Defendant Dykes offered no evidence as to why Nastri would not be targeted for enforcement action if he openly carried a firearm into a state park or forest.[9] Finally,

---

App.224.

[9] At all times relevant to this action, Connecticut did not prohibit open carry. It recently changed its law and prohibited open carry statewide beginning on October 1, 2023. *See* Conn. Pub. Act No. 23-53.

24

the district court did not account for the fact that EnCon's entire system of enforcing Conn. Agencies Regs. § 23-4-1 is built around public reporting, which removes the reporting of Nastri and any subsequent enforcement against him from the realm of speculation and places it squarely within the reality that occurs in Connecticut state parks and forests.

In sum, the district court's conclusion – raised *sua sponte* – that Nastri did not demonstrate a credible threat of prosecution has its basis on a selective reading of the record. Nastri demonstrates a specific threat of enforcement against himself as demonstrated by his email exchange with Deputy Commissioner Trumble. He demonstrated that EnCon regularly attempts to enforce Conn. Agencies Regs. § 23-4-1(c), and Defendant Dykes' subordinates have openly testified to their intent to continue to enforce the law against law-abiding Connecticut citizens such as Nastri if they find them carrying firearms for self-defense in Connecticut state parks and forests. Thus, the Court should reverse the district court's finding that Nastri lacks standing, vacate its dismissal of Nastri's case, and remand this matter for the district court to reach the final merits as well as the merits of Nastri's motion for a preliminary injunction.

**D. In the alternative, the "chilling" nature of Conn. Agencies Regs. § 23-4-1(c) on Nastri's constitutionally protected conduct supplies Nastri with an "actual or imminent" injury to pursue his Second Amendment claims.**

In its *sua sponte* effort to dismiss Nastri's case, the district court failed to take a step back and analyze his claim in view of the broader requirements for standing. To show the "injury in fact" required by Article III, Nastri must show a "concrete and particularized" and "actual or imminent" injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Only in the pre-enforcement context must Nastri show a "credible threat of prosecution." *Vitagliano*, 71 F.4th at 136. The Supreme Court, however, has steadily treated the "chilling" effect that a law has on constitutionally protected conduct as an "actual" injury rather than an "imminent" pre-enforcement injury. Because Conn. Agencies Regs. § 23-4-1(c) and Defendant Dykes and her subordinates' conduct chills Nastri's constitutionally protected conduct, the district court erred by not considering whether Nastri suffered an "actual" injury.

In *Virgina v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988), the Supreme Court considered a challenge to a Virigina statute that prohibited businesses from knowingly displaying for sale sexually explicit material in a manner that juveniles could view. The plaintiffs – various bookseller associations, several Virginia booksellers, and a parent and child – challenged the law as a violation of their First Amendment rights. *Id*. at 388 n.3. Prior to reaching the First Amendment

26

merits, the Supreme Court first considered whether they had standing. *Id*. at 392-93.

It held that they had standing based on the following reasoning:

> We are not troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them. Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution.

*Id*. at 393.

The key part of this holding is the Supreme Court's recognition that "self-censorship" – the "chilling" effect – is an actual harm.

The Supreme Court solidified this principle in *Meese v. Keene*, 481 U.S. 465 (1987). *Meese* held that, when the "chilling" of constitutionally protected conduct is such that it objectively chills that conduct, a plaintiff has sufficiently established an actual injury. *Id*. at 473 (holding that the reputational damage caused by the statutory labeling of a film as a "propaganda film" objectively chilled the plaintiff's intent to screen several films).

At least seven circuits have recognized this rule in the First Amendment context. *See New Hampshire Right To Life Political Action Committee v. Gardner*, 99 F.3d 8, 13-14 (1st Cir. 1996); *Cooksey v. Futrell*, 721 F.3d 226, 235-36 (4th Cir. 2013); *Barilla v. City of Houston, Texas*, 13 F.4th 427, 431 (5th Cir. 2021); *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 284-85 (6th Cir. 1997); *Republican*

*Party of Minn., Third Congressional Dist. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004); *Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010); *Wilson v. Stocker*, 819 F.2d 943, 946 (10th Cir. 1987).

Most, if not all, of these circuits recognize that, when the "chilling" doctrine applies, standing requirements relax. *See, e.g.*, *Cooksey*, 721 F.3d at 235. Under this principle, *Babbit* controls. Even though *Babbit* found that the criminal penalty provision in Arizona's labor laws had never been applied and may never be applied, it found that Arizona's failure to disavow its use provided the plaintiffs with an objectively reasonable fear of prosecution for violating it, thus chilling their speech. *Babbitt*, 442 U.S. at 302.

Does the "chilling" rule and its effect on a relaxed standing analysis apply outside of the First Amendment context though? The undersigned candidly could not locate a case where a federal circuit has applied it to another constitutional right. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111, 2130, 2132, 2156 (2022), however, strongly emphasizes the similarity in how courts should analyze First and Second Amendment claims. Its emphasis on the similarities in analysis for First and Second Amendment claims provides a strong starting point for applying the relaxed standing requirements to laws that "chill" the exercise of Second Amendment rights.

Additionally, like free speech, the right to bear arms is fundamental and important in our society. Laws that force plaintiffs to forego the exercise of their Second Amendment right to bear arms offend the Second Amendment in the same fashion as laws that force plaintiffs forego their expressive rights. Because every right enshrined in our Constitution is of equal importance, the Court should avoid making a value judgment that First Amendment expressive rights are more important than the Second Amendment right to bear arms. *See Bruen*, 142 S.Ct. at 2131 (forbidding courts from interest-balancing in Second Amendment cases). That includes in its application of prudential standing principles.

Nastri has already trod the ground well as to Defendant Dykes' refusal to disavow enforcement of Conn. Agencies Regs. § 23-4-1(c). He has demonstrated that EnCon has a system by which it regularly attempts to enforce Conn. Agencies Regs. § 23-4-1(c). App.188 (pp. 339-40 of hearing transcript). Colonel Lewis has vowed to continue enforcing it through his officers at every opportunity. App.190 (p. 348 of hearing transcript). Finally, Deputy Commissioner Trumble did not shy away from broadcasting this state of affairs to Nastri through his reference to the legislative report containing the explanation of the law and its penalties. App.80-86.

These facts gave, and continue to give, Nastri an objectively reasonable fear that, if he carries his handgun into a Connecticut state park or forest and is caught doing so, he will be punished under Conn. Agencies Regs. § 23-4-1(c). In particular,

Nastri cited $35 fine, the eviction and ban from state parks, the jeopardization of his pistol permit, and the impact on his FINRA licenses. App.143 (pp. 163-64 of hearing transcript). Additionally, Nastri also feared consequences to his law license for violating Conn. Agencies Regs. § 23-4-1(c). App.145 (pp. 169-70 of hearing transcript). Thus, Nastri stopped carrying his handgun into Connecticut state parks and forests for purposes of self-defense even though he continues to use them. App.145 (pp. 169-70 of hearing transcript).

In other words, Nastri has demonstrated an actual injury that he has already suffered and continues to suffer by virtue of Conn. Agencies Regs. § 23-4-1(c) chilling his exercise of his right to bear arms for self-defense in public. Because the district court did not address this question after *sua sponte* raising the issue of whether Nastri raised a credible threat of prosecution, the Court reverse the district court's finding that Nastri lacks standing, vacate its dismissal of Nastri's case, and remand this matter for the district court to reach the final merits as well as the merits of Nastri's motion for a preliminary injunction.

II. **The District Court Abused Its Discretion By Denying Nastri's Motion For Reconsideration Because It *Sua Sponte* Raised An Issue Pertaining To Standing That The Parties Did Not And Denied Nastri A Chance To Meet It.**

A. **Standard of review.**

A district court's denial of a motion for reconsideration is reviewed for abuse of discretion. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 435 (2d Cir. 2011).

**B. The district court denied Nastri with adequate notice and a fair opportunity to be heard by denying his motion for reconsideration after it *sua sponte* raised whether he had made a sufficient showing of past enforcement to establish a credible threat of prosecution.**

Counseled parties in the federal judiciary typically recognize a balance between the bench and the bar. The bar recognizes that courts' resources are precious and attempts to focus its efforts on issues raised and presented by the parties. It does so in reliance on the courts honoring the fundamental guarantee of due process and holding the parties to it: adequate notice and a fair opportunity to be heard. The district court upset this balance when, as it acknowledged, it *sua sponte* raised whether Nastri had sufficiently shown instances of past enforcement by EnCon to establish a credible threat of prosecution and denied Nastri's request to reconsider its conclusion that he did not. Well-established due process principles require the Court to reverse the district court's denial of Nastri's motion for reconsideration and consider the additional evidence that he submitted.

Within the Second Circuit, there are three major grounds for granting a motion for reconsideration: "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations and quotation marks omitted). Nastri claimed a manifest injustice before the district court.

As a general rule, courts follow the principle of party presentation. *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020). Under that principle, courts themselves must rely on the parties to frame issues for decision although they retain a modest initiating role. *Id*. A well-recognized exception to this rule is the power of courts to *sua sponte* raise and address questions of subject matter jurisdiction, including standing. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

This power has limitations though. "A district court should not dismiss an action pending before it without first providing the adversely affected party with notice and an opportunity to be heard." *McGinty v. New York*, 251 F.3d 84, 90 (2d. Cir. 2001). This rule serves several important purposes. First, "[i]t gives the adversely affected party a chance to develop the record to show why dismissal is improper…." *Id*. Second, "it facilitates *de novo* review of legal conclusions by ensuring the presence of a fully-developed record before an appellate court…." *Id*. Third, "it helps the trial court avoid the risk that it may have overlooked valid answers to what it perceives as defects in plaintiff's case…." *Id*.

"[A] *sua sponte* dismissal absent notice and an opportunity to be heard can itself be grounds for reversal…." *Id*. (citing *Lewis v. New York*, 547 F.2d 4, 5-6 & n.4 (2d Cir. 1976)).

32

At the outset, the district court's decision recognized that Defendant Dykes did not raise the issue of a credible threat of prosecution with respect to past enforcement statistics: "The Court recognizes that Defendant's motion to dismiss focused more attention on whether Plaintiff's intention to engage in the proscribed conduct was sufficiently concrete, and whether he planned to visit state parks and forests in the immediate future, than on the issue of credible threat of prosecution." App.259. Despite this language, the district court opined that Dykes' focus on whether Nastri intended to engage in proscribed conduct and whether he planned to visit state parks and forests in the future was so inherently tied to whether the threat of enforcement was credible and imminent as to place him on notice of his burden to present past enforcement statistics. App.259.

The district court, however, grossly understated the nature of the parties' presentation. Dykes only raised two contentions in her motion to dismiss for lack of standing. First, she claimed that Nastri did not allege that he actually intended to carry a handgun into state parks and forests. App.98. Second, she argued that he did not plausibly allege his intention to do so in the immediate future. App.98. The first argument goes to the first prong of the *Vitagliano* test: "an intention to engage in a course of conduct arguably affected with a constitutional interest…" even though the district court held that it falls under the credible threat of enforcement prong. *Vitagliano*, 71 F.4th at 136. The second argument also falls under the first prong of

33

*Vitagliano* because it goes to whether his intent is speculative or not – a fact that Dykes herself recognized by relying heavily on *Lujan* for her arguments on that front.

Regardless of which prong these arguments fall under, nothing in Dykes' motion to dismiss fairly apprised Nastri that Dykes disputed whether EnCon has enforced Conn. Agencies Regs. § 23-4-1(c). Nastri relied on the matters raised by the parties to respect the two-day hearing schedule that the parties and the district court agreed upon for the presentation of his case, and he tailored his evidentiary presentation to that schedule. It was only when the district court based its dismissal of his case on the alleged lack of enforcement that Nastri became aware that it was considering that as a basis for the dismissal of his case.

After the district court belatedly put Nastri on notice as to the basis for its *sua sponte* dismissal of his case, he attempted to meet it by filing a motion for reconsideration that included the evidence he would have presented if he had been fairly apprised that the state's enforcement of Conn. Agencies Regs. § 23-4-1(c) was at issue. The district court brushed this evidence aside in an opinion focused more on justifying its own course of action rather than fairly considering his motion. It characterized his failure to present the evidence in the original preliminary injunction hearing as a tactical choice that he must live with rather than what it really

34

was: not presenting evidence as an issue not in dispute. App.260-61. At no point did the district court address the actual merits of the evidence he presented.

The district court avoided addressing Nastri's evidence that was attached to his motion for reconsideration because it squarely contradicted its preferred view of the case. Nastri submitted Dykes' response to his interrogatories in which he posed the following interrogatory and she provided the following answer:[10]

> State how many times the DEEP has arrested or cited someone for a violation of Conn. Agencies Regs. 23-4-1(c) since January 1, 2013. Please provide the information in annual format: e.g., 2015 – 100 times; 2016 – 200 times.
>
> **ANSWER:...**

| Year | Conn. Reg. 23-4-1(c) Citations |
|------|-------------------------------|
| 2016 | 6 |
| 2017 | 10 |
| 2018 | 5 |
| 2019 | 1 |
| 2020 | 10 |
| 2021 | 7 |
| 2022 | 6 |

App.241-42 (Interrogatory 18).

---

[10] Dykes objected to the interrogatory on the grounds that it sought information not relevant to the issues in the case. App.241-42 (Interrogatory 18). This objection alone demonstrates that Dykes did not put her enforcement of Conn. Agencies Regs. § 23-4-1(c) in dispute for standing purposes.

Dykes also objected on several other grounds, including that it sought information protected by work-product or attorney-client privileges. She responded despite those assertions of privilege and never documented them in a privilege log or any other form for adjudication.

These statistics demonstrate that EnCon still enforces Conn. Agencies Regs. § 23-4-1(c) despite the anecdotal accounts that no one has ever heard of it being enforced. The statistics also are consistent with Colonel Lewis' testimony of how EnCon typically enforces the law – it waits for a call from the public and sends officers to investigate. The legal effect of these statistics is to completely undercut the district court's conclusion that Conn. Agencies Regs. § 23-4-1(c) is a moribund law that is no longer being enforced.

The enforcement statistics compel the conclusion on their own, but they become even more compelling when the Court considers them with Colonel Lewis' promise to enforce Conn. Agencies Regs. § 23-4-1(c):

> THE COURT: So you had some testimony that I'm a little unclear about. When you get calls regarding firearms, do you or do you not enforce the regulations prohibiting firearms in the parks and forests or do you only give warnings?

> THE WITNESS: If we find someone carrying a weapon in the state park, we typically charge them with -- if there's no other extenuating circumstances, it's the 23-4-1c charge of possession with a weapon in a state park. If there's other issues going on, we may have other charges.

App.190 (p. 348 of hearing transcript).

As discussed above, the district court committed a grave error by not notifying Nastri of its contemplated basis for *sua sponte* finding that he had not met his burden to show a credible threat of enforcement due to a lack of enforcement statistics. In doing so, it committed the very error that the Court has warned district courts not to

36

commit with *sua sponte* dismissals: it overlooked "valid answers to what it perceive[d] as defects in plaintiff's case…." *McGinty*, 251 F.3d at 90. It worked an even greater injustice and abused its discretion by turning away Nastri's attempt to bring those answers to its attention, thus denying him adequate notice and a fair opportunity to be heard.

For those reasons, the Court should find the district court abused its discretion by denying his motion for reconsideration, and the Court should consider the merits of Nastri's standing. *Id*. at 90 (holding that it could reach the merits because the questions were primarily of a legal nature).

## CONCLUSION

For the foregoing reasons, the Court should reverse the decisions of the district court dismissing Nastri's case for lack of standing, denying his motion for a preliminary injunction on the same basis, and denying his motion for reconsideration.

Dated: October 26, 2023       *//s//  Cameron L. Atkinson*

Cameron L. Atkinson, Esq.
ATKINSON LAW, LLC
122 Litchfield Rd., Ste. 2
P.O. Box 340
Harwinton, CT 06791
Telephone: 203.677.0782
Email: catkinson@atkinsonlawfirm.com

*Attorney for Plaintiff-Appellant*

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I hereby certify that:

1. This brief complies with the type-volume limitation of Local R. 32.1 because it contain 8,977 words, excluding the parts of the brief exempted by Fed. R. App. P. 32, as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32 and the typestyle requirements of Fed. R. App. P. 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

Dated: October 26, 2023

/s/ Cameron L. Atkinson /s/
Cameron L. Atkinson

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 26, 2023, an electronic copy of the foregoing Brief Of The Plaintiff-Appellant was filed with the Clerk of the Court using the ECF system and thereby served upon all counsel appearing in this case.

<u>/s/ Cameron L. Atkinson /s/</u>
Cameron L. Atkinson