# 23-1023-cv

*To Be Argued By*:
Timothy J. Holzman
Assistant Attorney General

# In the United States Court of Appeals for the Second Circuit

———————————

DAVID J. NASTRI, ESQ.,

Plaintiff-Appellant

v.

KATIE DYKES

Defendant-Appellee

———————————

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

———————————

**BRIEF OF DEFENDANT-APPELLEE KATIE DYKES**

———————————

WILLIAM TONG
ATTORNEY GENERAL

Timothy J. Holzman
Blake T. Sullivan
Thadius L. Bochain
Assistant Attorneys General
165 Capital Avenue
Hartford, CT 06106
Ph: 860-808-5020
Fax: 860-808-5347
Email: Timothy.Holzman@ct.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT ...................................................... 1

COUNTER-STATEMENT OF THE ISSUES ......................................... 2

INTRODUCTION ............................................................................ 3

COUNTERSTATEMENT OF THE CASE ............................................. 5

    I.    FACTUAL BACKGROUND ................................................. 5

        A.  Connecticut's Regulation of Firearms in State Parks and Forests ................................................................... 6

        B.  Enforcement of the Firearm Regulation .......................... 7

        C.  Plaintiff ..................................................................... 9

    II.   PROCEDURAL HISTORY ................................................. 11

SUMMARY OF ARGUMENT ............................................................ 13

ARGUMENT ................................................................................. 18

    I.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF LACKED STANDING BECAUSE HE FAILED TO PROVE A CREDIBLE THREAT OF ENFORCEMENT. ............................................................ 18

        A.  Plaintiff Must Adduce Specific Facts Showing a Credible and Substantial Threat of Enforcement. ........................ 19

        B.  The District Court Properly Concluded that Plaintiff Failed to Prove a Credible Threat of Enforcement. .................... 22

1. DEEP's General Willingness to Enforce the Regulation Is Insufficient to Show a Credible Threat of Prosecution. ................................................................... 22

2. The Record Reflects None of the Factors this Court Associates with a Credible Threat of Prosecution. ......... 26

3. Additional Facts Underscore that Plaintiff's Alleged Fear of Enforcement is Based on Speculation and Conjecture. .................................................................... 34

4. This Court Should Be Especially Reluctant to Allow Plaintiff's Pre-Enforcement Claim Because § 23-4-1(c) is Neither a Criminal Nor a Civil Punitive Law. .............. 37

C. The First Amendment "Chilling" Doctrine Does Not Relieve Plaintiff of his Burden to Show a Credible Threat of Enforcement. ................................................................. 40

D. Plaintiff Was Not Denied Notice or an Opportunity to be Heard. ........................................................................... 44

II. THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTION FOR RECONSIDERATION, WHICH SOUGHT TO INTRODUCE DATA THAT PLAINTIFF HAD AVAILABLE AT THE HEARING. ......... 48

CONCLUSION ........................................................................ 51

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ........................................................................ 53

CERTIFICATION OF SERVICE ............................................ 54

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018), *cert. denied*,

   139 S. Ct. 1292 (2019) .......................................................................... 41

*Adam v. Barr*, 792 F. App'x 20 (2d Cir. 2019), *cert. denied*,

   140 S. Ct. 1119 (2020) .................................................................. passim

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36

   (2d Cir. 2012) .................................................................................. 48, 51

*Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 99 S. Ct. 2301,

   60 L. Ed. 2d 895 (1979) ........................................................................ 21

*Bank v. United States Dep't of the Treasury*, No. 19-3977,

   2021 WL 5022645, 2021 U.S. App. LEXIS 32358

   (2d Cir. Oct. 29, 2021) (summary order) ............................................. 39

*Bronson v. Swensen*, 500 F.3d 1099 (10th Cir. 2007) ................ 24, 25, 50

*Butto v. Collecto Inc.*, 845 F. Supp. 2d 491 (E.D.N.Y. 2012) .................. 49

*Cacchillo v. Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011) ........................... 21

*California v. Texas*, 141 S. Ct. 2104, 210 L. Ed. 2d 230 (2021) .............. 20

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) .................

   ........................................................................................... 18 n.4, 29, 45

iii

*Cayuga Nation v. Tanner*, 824 F.3d 321 (2d Cir. 2016).............. 28, 32, 33

*Christian v. Nigrelli*, 642 F. Supp. 3d 393 (W.D.N.Y. 2022),

    appeal pending (No. 22-2987; argued on March 30, 2023) ................. 34

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138,

    185 L. Ed. 2d 264 (2013) ............................................... 20, 21, 34, 37 n.8

*Collins v. United States*, 996 F.3d 102 (2d Cir. 2021) ............................ 22

*Doe v. Bolton*, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201

    (1973) ........................................................................................ 30 n.7

*Doe v. Duling*, 782 F.2d 1202 (4th Cir. 1986) .................................. 22, 25

*Does v. Suffolk Cty.*, No. 21-1658, 2022 WL 2678876,

    2022 U.S. App. LEXIS 19094 (2d Cir. July 12, 2022) ........................ 27

*Firearm Owners Against Crime v. City of Harrisburg*,

    2016 WL 1162283, 2016 U.S. Dist. Lexis 38878

    (M.D. Pa. March 24, 2016) .................................................................. 44

*Grendell v. Ohio Supreme Court*, 252 F.3d 828 (6th Cir.),

    *cert. denied*, 534 U.S. 955 (2001) ...................................................... 43

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013), *cert. denied*,

    572 U.S. 1087 (2014) .............................................................. 23, 26, 39

iv

*Hemp Indus. Ass'n v. DEA*, 36 F.4th 278 (D.C. Cir. 2022) ..................... 29

*Illinois v. General Electric Co.*, 683 F.2d 206 (7th Cir. 1982),

   *cert. denied*, 461 U.S. 913 (1983) .................................................... 30 n.7

*Kearns v. Cuomo*, 981 F.3d 200 (2d Cir. 2020) ....................................... 27

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) ................. 27, 28

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) .... 48 n.9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130,

   119 L. Ed. 2d 351 (1992) ..................................................................... 21

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ...................... 22

*McGinty v. New York*, 251 F.3d 84 (2d. Cir. 2001) ........................... 45, 47

*Miller v. Dep't of Agric.*, 168 Conn. App. 255, 145 A.3d 393, *cert. denied*,

   323 Conn. 936, 151 A.3d 386 (2016) .................................................. 38

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S. Ct. 1965,

   32 L. Ed. 2d 627 (1972) ....................................................................... 43

*Nat'l Shooting Sports Found. v. AG of N.J.*, 80 F.4th 215

   (3d Cir. 2023) ............................................................................... passim

*Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) .............. 31

*New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8

   (1st Cir. 1996) ................................................................... 41

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ..............

   ....................................................................... 4, 11, 14, 43

*New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42

   (2d Cir. 2020) ..................................................................... 6

*Ollie v. Univ. of Conn.*, 364 F. Supp. 3d 143 (D. Conn. 2019),

   appeal terminated No. 19-526 (March 28, 2019) ................................ 43

*Picard v. Magliano*, 42 F.4th 89 (2d Cir. 2022) ................................ 27, 42

*Robinson v. Sessions*, 721 Fed. Appx. 20 (2d Cir.), *cert. denied*,

   138 S. Ct. 2584 (2018) (summary order) .............................................. 44

*San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121

   (9th Cir. 1996) ................................................................... 44

*Seegars v. Ashcroft*, 396 F.3d 1248 (D.C. Cir. 2005), *cert. denied*,

   546 U.S. 1157 (2006) ........................................................... 23

*Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022) ......................... 27, 32, 33, 42

*Sloan v. United Techs. Corp.*, 596 Fed. Appx. 35 (2d Cir. 2015)

   (summary order) ................................................................. 50

vi

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ..................... 41

*Steffel v. Thompson*, 415 U.S. 452, 94 S. Ct. 1209, 39 L. Ed. 2d

(1974) ................................................................................................ 28

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149,134 S. Ct. 2334,

189 L. Ed. 2d 246 (2014) ........................................................... passim

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134

(9th Cir. 2000) ............................................................................. 23, 28

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ........................... 20

*Trump v. New York*, 141 S. Ct. 530 (2020) ........................................... 37

*Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65 (2d Cir. 2019),

*cert. denied*, 140 S. Ct. 2508 (2020) ...................................... 30, 31, 32

*United States v. Brown*, No. 21-122, 2021 WL 5872940, 2021 U.S. App.

LEXIS 36638 (2d Cir. Dec. 13, 2021) (summary order) ..................... 48

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010) ........................ 43

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245

(2d Cir. 1992) ...................................................................................... 48

*Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 108 S. Ct. 636,

98 L. Ed. 2d 782 (1988) .................................................................. 30 n.7

vii

*Vitagliano v. Cnty. of Westchester*, 71 F.4th 130 (2d Cir. 2023) ..... passim

Vt. Right to Life Comm. v. Sorrell, 221 F.3d 376 (2d Cir. 2000) ............ 39

*Watson v. Buck*, 313 U.S. 387 61 S. Ct. 962, 85 L. Ed. 1416 (1941) ....... 22

*Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021) ...................... 40

*Zentmyer v. United States*, 2022 WL 959806, 2022 U.S. Dist.

    LEXIS 59235 (S.D. Cal. Mar. 30, 2022) ............................................. 44

**Statutes**

28 U.S.C. § 1291 ............................................................................... 1

28 U.S.C. § 1331 ............................................................................... 1

42 U.S.C. § 1983 ............................................................................. 11

Conn. Agency Regs. § 23-4-1(c) ................................................ passim

Conn. Agency Regs. § 23-4-5(a) ................................................... 38

Conn. Agency Regs. § 23-4-5(b) ........................................... 7, 37, 38

Conn. Gen. Stat. § 23-4(a) ..................................................... 7, 37, 38

Conn. Gen. Stat. § 51-164n(d) ..................................................... 38

Conn. Gen. Stat. § 51-164n(h) ..................................................... 38

Conn. Gen. Stat. § 53a-24(a) ....................................................... 38

viii

**Constitutional Provisions**

First Amendment to the United States Constitution................. 16, 40, 43

Second Amendment to the United States Constitution ................. passim

# JURISDICTIONAL STATEMENT

This is an appeal from a final judgment disposing of all parties' claims. So this Court has appellate jurisdiction under 28 U.S.C. § 1291. The District Court had federal question jurisdiction under 28 U.S.C. § 1331. On July 12, 2023, the District Court granted Defendant Katie Dykes' motion to dismiss because Plaintiff David Nastri lacked standing to sue, and denied Plaintiff's motion for preliminary injunction. Plaintiff filed a timely notice of appeal. The District Court then denied Plaintiff's motion for reconsideration, and on August 22, 2023, entered judgment for Defendant. Plaintiff filed an amended notice of appeal on August 28, 2023.

## COUNTERSTATEMENT OF THE ISSUES

Finding no Article III standing, the District Court dismissed Plaintiff's pre-enforcement challenge to Connecticut Agency Regulation § 23-4-1(c), which bars carrying weapons in state parks and forests on pain of a $35 fine and temporary exclusion. The issues on appeal are:

I.  Did the District Court correctly hold that Plaintiff failed to prove a credible threat of enforcement, where—among other things— Plaintiff introduced no evidence that the regulation had ever been enforced? [Pages 18 – 47]

II. Did the District Court properly exercise its discretion to deny Plaintiff's motion for reconsideration, which sought to introduce data that Plaintiff had, but failed to introduce, at the hearing on the motion to dismiss? [Pages 48 – 51]

2

## INTRODUCTION

Countless times over many years, Plaintiff David Nastri carried his concealed handgun into Connecticut state parks and forests. He was never stopped or cited. As far as he knows, nobody ever knew he was carrying. And during 40 years of visiting those locations, Plaintiff never saw or heard of anyone else being cited or even warned—much less prosecuted—for carrying a weapon. He has never even seen a park police officer, and no wonder: Connecticut has only 52 full-time law enforcement officers for its 142 state parks and forests, spread over 255,000 acres. For all Plaintiff knows, and for all the record reflects, no officer is stationed at the only three parks and forests that Plaintiff visits.

So Plaintiff has never been injured by Connecticut Agency Regulation § 23-4-1(c), which bars visitors from carrying firearms in state parks and forests. And the likelihood of his ever being injured—detected, stopped, and cited—is vanishingly low. Even if he were to face a civil enforcement proceeding, he would have a chance to plead his constitutional rights as a defense before facing the minimal consequences: a $35 fine and temporary exclusion from the parks.

3

Plaintiff brought a pre-enforcement challenge anyhow. After *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) (*Bruen*), he sought to enjoin the Commissioner of Connecticut's Department of Energy and Environmental Protection (DEEP) from enforcing its regulation. But at a hearing on the Defendant's heavily contested motion to dismiss for lack of standing, Plaintiff introduced no evidence the regulation had ever been enforced. So, applying black-letter standing law, the District Court dismissed, holding that Plaintiff failed to show a particularized and credible threat that the regulation would be enforced against him if he engaged in his intended conduct of carrying a concealed handgun for self-defense when he visited a park or forest.

This Court should affirm. To carry his burden, Plaintiff relied on a single sentence of testimony indicating that DEEP is generally willing to enforce its regulation. But a general intent to enforce against someone, at some point and under some circumstances, is not enough to show that this Plaintiff faces a particularized credible threat of prosecution for his intended conduct. Instead, this Court's precedent requires Plaintiff to show—at a minimum—relevant instances of prior enforcement; specific

4

threats of enforcement aimed at him; or that the law is targeted at him or his conduct. He never did.

The District Court also properly exercised its discretion to deny Plaintiff's motion for reconsideration. After he lost, Plaintiff tried to supplement the record with data about citations issued under § 23-4-1(c). But he had that data a month before the hearing and failed to introduce them into evidence. This attempt at a do-over is the exact kind of "second-bite at the apple" that this Court has repeatedly held is not appropriate in a motion for reconsideration. And the data would have made no difference even if Plaintiff had timely introduced them, because they say nothing about the circumstances of the prior citations and therefore would not have shown a credible threat that § 23-4-1(c) would be enforced against Plaintiff's specific conduct.

## COUNTERSTATEMENT OF THE CASE

## I.   FACTUAL BACKGROUND

Construing Defendant's motion to dismiss as raising a fact-based challenge to Plaintiff's standing, the District Court "consider[ed] all evidence relevant to standing that was submitted as part of the preliminary injunction proceeding," along with portions of Plaintiff's

deposition transcript. PA 215[1]; *see also New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020) ("to establish standing for a preliminary injunction, a plaintiff . . . must set forth by affidavit or other evidence specific facts" establishing standing).

## A. Connecticut's Regulation of Firearms in State Parks and Forests

Connecticut's park and forest system includes 110 parks and 32 forests, totaling 255,000 acres across the state. *Def. Ex.* 137 (Tyler Dec.) at ¶¶ 35, 36, 38. They offer a range of recreational activities—from hiking and sightseeing to hunting, special events, and youth sports—and are among the most popular attractions for residents and visitors, drawing about 17 million visits in 2022. *Id.* at ¶¶ 43-47, 49.

Since 1918, Connecticut has generally prohibited carrying firearms in its parks and forests.[2] The prohibition is encoded in agency regulation

---

[1] References to Plaintiff's Appendix are "PA at __."

[2] In 1918, the State Park Commission—a predecessor of DEEP—adopted a rule, posted in all parks, that "the use of firearms or having them in your possession is forbidden." *Def. Ex.* 133 (Glaser Dec.) at ¶ 41. Substantively, the prohibition has been in place continuously since 1918.

6

§ 23-4-1(c), issued pursuant to DEEP's regulatory authority under Conn. Gen. Stat. § 23-4(a). It provides: "Hunting or carrying of firearms, archery equipment or other weapons, including but not limited to air rifles and slingshots, is not permitted in any state park or forest except as authorized by [DEEP]. All carrying or use of weapons is subject to applicable provisions of the Connecticut General statutes and regulations adopted thereunder." Violating § 23-4-1(c) is an infraction—carrying a fine of $35 and exclusion from the park system for twenty-four hours, and potentially—upon conviction—for up to one year. Conn. Gen. Stat. § 23-4; Conn. Agency Regs. § 23-4-5(b).

### B.    Enforcement of the Firearm Regulation

The Environmental Conservation Police ("EnCon"), the law enforcement entity primarily responsible for policing state parks and

---

It was republished in a similar 1924 notice and in regulations promulgated in the 1940s. *Def. Ex.* 137 (Tyler Dec.) at ¶¶ 83-84, 88.

forests,[3] has authority to enforce § 23-4-1(c) and all other state park regulations.  PA 166 (Tr. at 251); *see also Def. Ex.* 136 (Lewis Dec.) at ¶ 2.  For the entire system of 142 parks and forests, EnCon has only 52 law enforcement officers and 20-30 temporary employees (called rangers) who work during busier summer months. PA 165 (Tr. at 248-49); *see also Def. Ex.* 136 (Lewis Dec.) at ¶ 7.

Because of EnCon's limited personnel, it cannot station police officers or rangers at all state parks and forests. PA 223; *see also* PA 166-67 (Tr. at 254-55); *Def. Ex.* 136 (Lewis Dec.) at ¶¶ 11-13.  Instead, it carefully allocates personnel based on season and activity.  *Id.* at ¶ 13; PA 165 (Tr. at 249-50).

As a matter of policy, "[i]f [EnCon] find[s] someone carrying a weapon in the state park, [EnCon] typically charge[s] them with [violating § 23-4-1(c)] if there's no other extenuating circumstances . . . ." PA 190 (Tr. at 348) EnCon rangers "could" enforce § 23-4-1(c), but

---

[3] State and municipal police departments also have authority to police State parks and forests, but generally do not patrol them. PA 167, 184 (Tr. at 255, 325-26).

generally do not. PA 166 (Tr. 251-52). Colonel Chris Lewis—Director of EnCon—did not know of any times an EnCon ranger enforced § 23-4-1(c) since he joined EnCon in 2019. PA 166 (Tr. at 252).

## C. Plaintiff

Plaintiff has held a pistol permit for about 30 years. PA 211; *see also* PA 137 (Tr. at 138). He carries his handgun for self-defense almost everywhere he goes, but abides by laws governing where he may carry it and the policies or preferences of any private property owners. PA 212; *see also* PA 138 (Tr. at 141).

Plaintiff uses only three state parks and forests. PA 211. He visits Sleeping Giant State Park once a month to hike; Naugatuck State Forest once or twice a year to hike; and the Farmington River Canal Trail to walk or run several times each week. *Id.*; *see also* PA 139-40 (Tr. at 148-49). He has been visiting Sleeping Giant since he was 15 years old, Naugatuck for 40 years, and Farmington Canal for 10 years. PA 211; *see also* PA 140 (Tr. at 149). Before the summer of 2022, Plaintiff carried a concealed handgun into Sleeping Giant and Naugatuck "[e]very time [he] went there," and carried on the Farmington Canal about three times each

9

week.  PA 212; *see also* PA 137-38, 140 (Tr. at 140-41; 150-51).  He prefers

to carry his Glock 42 when in public in part because it is easier to conceal

than his other firearms.  PA 137-38 (Tr. at 140-41).  As far as he knows,

nobody has ever noticed his concealed firearm.  PA 224 (*citing* Pl. Dep.

Tr. at 142-43).

Plaintiff has never been cited under § 23-4-1(c) or threatened with

a firearm (or any other) citation by EnCon or any other law enforcement

officer.  PA 213; *see also* PA 153, 162 (Tr. at 201, 236, 238).  Nor does he

know of anyone else who has been cited.  PA 162 (Tr. at 238).  In fact, in

all his years visiting parks and forests, Plaintiff has never encountered

an EnCon officer. PA 213; *see also* PA 160 (Tr. at 230).

Plaintiff avers that he first learned of § 23-4-1(c) in the summer of

2022 while applying for a hunting license.  PA 212.  In November 2022,

Plaintiff e-mailed Mason Trumble, DEEP's Deputy Commissioner, and

asked whether § 23-4-1(c) prohibits carrying a handgun for self-defense

unrelated to lawful hunting activities.  PA 220-21.  Trumble responded

with a link to a report explaining where handguns were permitted, which

Plaintiff interpreted as indicating that § 23-4-1(c) generally prohibits

10

carrying handguns for self-defense. *Id.*; PA 141 (Tr. 156). Because of that exchange, Plaintiff says, he stopped carrying a handgun when he visited parks and forests since he "will not willfully disobey a law . . . ." PA 145 (Tr. at 169).

## II. PROCEDURAL HISTORY

Plaintiff sued under 42 U.S.C. § 1983 claiming that § 23-4-1(c) violates his Second Amendment right to bear arms in public for self-defense as recognized in *Bruen*. ECF No. 1. He filed an emergency motion for preliminary injunction (PI) and temporary restraining order (TRO). ECF No. 8.

At a telephonic status conference on January 17, 2023, the District Court denied the TRO. The District Court also directed Plaintiff to file an amended pleading in response to Defendant's anticipated motion to dismiss for lack of standing. PA 213-14; ECF Nos. 12 and 15.

Plaintiff filed an Amended Verified Complaint and an amended motion for preliminary injunction. ECF Nos. 13 and 14. On March 30, Defendant moved to dismiss for lack of standing and filed a separate opposition to Plaintiff's motion for preliminary injunction. ECF Nos. 22

and 23.  The District Court construed Defendant's motion to dismiss as raising a fact-based challenge to Plaintiff's standing.  PA 215.

After the preliminary injunction motion and motion to dismiss were fully briefed, the District Court held a consolidated evidentiary hearing and oral argument on May 9 and May 10, 2023.  PA 214.  At the start of the May 9 hearing, the District Court asked for "testimony and evidence on standing since standing is jurisdictional and therefore required to be established."  PA 105 (Tr. at 10).  The parties acknowledged they understood that Plaintiff's standing was an issue that needed to be resolved at the hearing.  PA 134 (Tr. at 127-28).

On July 12, 2023, the District Court granted Defendant's motion to dismiss.  The Court found that, although Plaintiff had established an intention to engage in conduct that § 23-4-1(c) prohibited—carrying a handgun concealed for self-defense to three parks/forests—he presented no evidence that he faced a credible threat § 23-4-1(c) would be enforced against him if he engaged in that conduct.  PA 224.  So the District Court dismissed for lack of subject matter jurisdiction and denied Plaintiff's motion for preliminary injunction.  PA 225.

12

Plaintiff filed a notice of appeal that same day.  Later, Plaintiff filed a motion for reconsideration, seeking to supplement the record with statistical data showing the number of citations issued under § 23-4-1(c) each year since 2016.  PA 228, 241-42.  Plaintiff had obtained that data in discovery a month before the hearing, but did not introduce it into evidence.  The District Court applied settled law to deny the motion, explaining: "Evidence that was known and available to Plaintiff when the opposition was filed cannot be the basis for . . . reconsideration . . . ." PA 260 (internal quotation marks omitted).  Plaintiff then filed an amended notice of appeal.

## SUMMARY OF ARGUMENT

To justify his pre-enforcement suit, Plaintiff needed to prove—with specific facts and actual evidence at the preliminary injunction stage— not only that § 23-4-1(c) deterred him from carrying his concealed handgun in parks and forests, but also that he faced a credible and substantial threat it would actually be enforced against him if he did carry.  The District Court correctly found that he failed to meet that burden.

Plaintiff had unwittingly violated § 23-4-1(c) for years before *Bruen,* and was never stopped or cited. And he introduced no evidence about the specific circumstances under which EnCon may enforce § 23-4-1(c). The only evidence about enforcement practice—a single sentence of testimony from EnCon's director—merely established a general intention or willingness to enforce § 23-4-1(c) under some circumstances. But the record provided no concrete information about what those circumstances are, or whether EnCon typically enforces the rule against those who carry concealed for self-defense.

This Court has held that the state's general intention to enforce a law on the books is not enough to establish a credible threat of enforcement. Plaintiffs must instead present evidence of some other factor demonstrating the threat is particularized to the conduct they intend to engage in, such as (1) a history of enforcement for the same conduct; (2) threats of future enforcement against the plaintiff; or (3) that the law itself specifically targets plaintiff or his/her intended conduct. To Defendant's knowledge, this Court has only ever found a credible threat

14

of enforcement when one of these factors were present, which is fully consistent with the decisions from other Circuit Courts of Appeal.

Plaintiff established none of those factors here. He introduced no evidence of prior instances of enforcement or threats of enforcement. Nor does § 23-4-1(c), which has existed in some form for over a century, target Plaintiff or his intended conduct. It is a generally applicable law that prohibits weapons in all State parks and forests without authorization from DEEP, and Plaintiff introduced no evidence that it was designed specifically to prohibit carrying concealed for self-defense—instead of, for example, to prohibit unauthorized hunting or other criminal conduct.

The absence of the above factors is dispositive, but there are other reasons to conclude Plaintiff lacks standing. First, in light of practical constraints on EnCon's personnel, EnCon's general hands-off style of policing, and the inconspicuous nature of Plaintiff's conduct, the likelihood § 23-4-1(c) will be enforced against Plaintiff is exceedingly low, and depends on a chain of possibilities that have not yet and may never occur. In the many years Plaintiff brought his handgun to parks, he never even encountered an EnCon officer. Second, although plaintiffs

15

need not expose themselves to liability under a criminal or civil punitive law before bringing a pre-enforcement suit, that reasoning does not apply to a law like § 23-4-1(c), a civil infraction that carries only a small fine of $35 and potential temporary ban from parks and forests. So this Court should be especially skeptical of Plaintiff's asserted need to adjudicate the constitutional questions presented here, since Plaintiff could raise his Second Amendment challenge to § 23-4-1(c) as an affirmative defense in the vanishingly unlikely circumstances that he is ever ticketed.

Plaintiff's other arguments about standing are easily dispensed with. Plaintiff's attempt to invoke the First Amendment "chilling" doctrine to circumvent the credible threat of enforcement requirement both misunderstands that doctrine and is foreclosed by binding precedent. His argument that the District Court failed to provide him with adequate notice and opportunity to be heard also fails. He was on notice since the case's inception that standing was at issue and was permitted to conduct discovery, file briefs, and present testimony and argument.

16

The District Court also properly exercised its discretion to deny Plaintiff's motion for reconsideration. The motion attempted to introduce statistical data about enforcement of § 23-4-1(c) that Plaintiff had a month before the hearing. That attempt at a second-bite at the apple is inappropriate in a motion for reconsideration. And the data would have made no difference even if Plaintiff had introduced it. The data says nothing about the circumstances of any prior citations, so it would have told the District Court nothing about the imminent threat of enforcement that Plaintiff faced for his specific conduct.

The District Court properly granted Defendant's motion to dismiss, denied Plaintiff's motion for preliminary injunction, and denied Plaintiff's motion for reconsideration. This Court should affirm.

17

# ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF LACKED STANDING BECAUSE HE FAILED TO PROVE A CREDIBLE THREAT OF ENFORCEMENT.[4]

Plaintiff identifies no evidence of a credible threat of prosecution—as he must, even if this Court humors his unprecedented effort to import his "chilling" theory into the Second Amendment context. He relies instead on the general presumption of enforcement, since Defendant has not "disavowed an intention to enforce the law going forward." *Pl. Br.* at 18. But he cannot carry his burden merely by citing Defendant's general willingness to enforce § 23-4-1(c) at some point under some circumstances. This Court and other circuits instead require Plaintiff to prove that the threat of prosecution is both substantial and particularized to Plaintiff's intended conduct—here, carrying a handgun concealed for self-defense—based on factors including: (1) a history of enforcement for the same conduct, (2) threats of future enforcement, and

---

[4] The Court reviews the District Court's factual findings for clear error and its legal conclusions de novo. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

18

(3) evidence that the law itself specifically targets Plaintiff or his intended conduct. Plaintiff introduced none of that evidence in the District Court. The threadbare record—including Plaintiff's own years of concealed carrying in state parks—shows that Plaintiff faces no substantial threat of prosecution, or indeed any meaningful penalties at all to justify an end-run around the normal rule that he must suffer an injury before he sues.

## A. Plaintiff Must Adduce Specific Facts Showing a Credible and Substantial Threat of Prosecution.

Plaintiff alleges a future injury: If he carries in a park, he imagines, DEEP may enforce its civil regulation against him. And he asserts that he should not have to raise his constitutional challenge as a defense to that action, risking a $35 fine and a possible temporary eviction from the state parks.

Just like in every other federal case, Plaintiff bears the burden of establishing Article III standing by showing "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,

157-58 (2014) (internal quotation marks omitted). These requirements are "built on separation-of-powers principles" and "serve[] to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

Ordinarily, standing doctrine bars plaintiffs from suing until they have been injured, since courts "do not adjudicate hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). But a narrow path is open to plaintiffs who can show that a claimed future injury is "concrete, particularized, and . . . imminent." *Id.*

To carry his burden of showing an imminent future injury, Plaintiff has to prove not only that he would engage in the prohibited conduct but for the law, but also "that there exists a credible threat of prosecution thereunder." *Vitagliano v. Cty. of Westchester*, 71 F.4th 130, 137 (2d Cir. 2023). "[T]he Supreme Court described the necessary threat of enforcement as 'credible' and 'substantial.'" *Nat'l Shooting Sports Found. v. AG of N.J.*, 80 F.4th 215, 221-22 (3d Cir. 2023) (*quoting Susan B. Anthony List*, 573 U.S. at 158-59, 164); *see also California v. Texas*, 141 S. Ct. 2104, 2114 (2021). An "imaginary or speculative" fear of

enforcement is not enough. *Vitagliano*, 71 F.4th at 138 (*quoting Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Otherwise, the Supreme Court has warned, an "enterprising plaintiff" could "manufacture standing" simply by altering their behavior or otherwise inflicting harm on themselves based on supposed "fears of hypothetical future harm that are not certainly impending." *Clapper*, 568 U.S. at 402.

And Plaintiff must prove the necessary threat of prosecution by adducing specific facts. A plaintiff "bear[s] the burden of establishing" "[e]ach element" of standing. *Susan B. Anthony List*, 573 U.S. at 158 (quotation marks omitted). That burden "increases over the course of litigation." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Although "general factual allegations of injury" may suffice at the pleading stage, at the preliminary injunction stage "the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" to establish standing. *Lujan*, 504 U.S. at 561; *see Cacchillo*, 638 F.3d at 404 (burden to establish standing for preliminary injunction

21

"will normally be no less than that required on a motion for summary judgment"). Ultimately, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Collins v. United States*, 996 F.3d 102, 108 (2d Cir. 2021).

## B. The District Court Properly Concluded that Plaintiff Failed to Prove a Credible Threat of Prosecution.

Plaintiff failed to show a credible threat that DEEP would prosecute him for the specific conduct that he alleged. At most, he showed that DEEP generally intends to enforce the regulation under some circumstances. That is not enough.

### 1. DEEP's General Willingness to Enforce the Regulation Is Insufficient to Show a Credible Threat of Prosecution.

To carry his burden of proving a credible threat of prosecution, Plaintiff had to "show more than the fact that state officials stand ready to perform their general duty to enforce laws." *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986) (*citing Watson v. Buck*, 313 U.S. 387, 400 (1941)). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy'

22

requirement." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000); *see also Seegars v. Ashcroft*, 396 F.3d 1248, 1253 (D.C. Cir. 2005) ("our [caselaw] demand[s] more than . . . a conventional background expectation that the government will enforce the law"), *cert. denied*, 546 U.S. 1157 (2006).

Instead, Plaintiff had to show the threat of prosecution is "particularize[d]" to his intended conduct of carrying a concealed handgun for self-defense in the three parks and forests he frequents. *Adam v. Barr*, 792 F. App'x 20, 23 (2d Cir. 2019) (plaintiff failed to "demonstrate that the [Controlled Substances Act] is enforced against the kind of personal religious use that [Plaintiff] allegedly intends to engage in"), *cert. denied*, 140 S. Ct. 1119 (2020); *see also Hedges v. Obama*, 724 F.3d 170, 202 (2d Cir. 2013) (plaintiffs failed to establish standing in part because they produced no evidence "that individuals even remotely similarly situated have been subjected to" enforcement under challenged law), *cert. denied*, 572 U.S. 1087 (2014); *Vitagliano*, 71 F.4th at 139 (favorably discussing *Adam*). "[T]he credibility of a 'threat' is diluted when a factual dissimilarity exists between the plaintiff's

23

intended future conduct and the conduct" that is under threat of
enforcement. *Bronson v. Swensen*, 500 F.3d 1099, 1108 (10th Cir. 2007);
*e.g. Nat'l Shooting Sports Found.*, 80 F.4th at 221-22 (Attorney General
"set[ting] up an office to enforce" new law permitting civil enforcement
actions against gun manufacturers did not established credible threat of
enforcement absent "specific threat" against plaintiff's "intended
conduct").

But the only evidence Plaintiff introduced below was Defendant's
general inclination to enforce the regulation. Plaintiff relies heavily on a
single sentence of testimony from Colonel Lewis—director of Encon—
that "[i]f we find someone carrying a weapon in the state park, we
typically charge them with" violating § 23-4-1(c) "if there's no other
extenuating circumstances," and "[i]f there's other issues going on, we
may have other charges." *Pl. Br.* at 20 (*quoting* PA 190 (Tr. at 348)). That
bare testimony raised more questions than it answered, and Plaintiff did
not ask any follow-up questions to develop the testimony further. The
testimony does not indicate, for example, whether EnCon officers
maximally enforce the law in every instance or have discretion to give

24

warnings—Lewis' use of "typically" and "extenuating circumstances" suggests the latter—and if they do have discretion, how often they exercise it and under what circumstances. And the testimony says nothing about how EnCon would treat Plaintiff's intended conduct of carrying a concealed handgun for self-defense—or how EnCon would even know that Plaintiff was carrying. At best, the testimony merely establishes the sort of general, unparticularized intention to enforce the law that is insufficient to satisfy Article III. *See Bronson*, 500 F.3d at 1108; *Adam*, 792 Fed. Appx. at 23; *see also Doe*, 782 F.2d at 1205 (plaintiffs lacked standing to challenge law prohibiting fornication despite officers "testif[ying] in general terms that all laws are enforced and specifically stat[ing] that they would investigate complaints . . . if time and personnel limitations allowed").

Plaintiff also overstates the significance of Lewis' testimony that EnCon would place a high priority on responding to a report of a firearm in a park. *Pl. Br.* at 19-20 (*quoting* PA 188 (Tr. at 339-40)). Lewis testified that such reports are given priority as a matter of protocol because they are "public safety call[s]," not because EnCon specifically wishes to

imminently enforce § 23-4-1(c). And again, even if the testimony had connected that protocol to enforcement of § 23-4-1(c), it still provides no information about how EnCon would respond to the specific conduct Plaintiff claims he wants to engage in.[5]

### 2. The Record Reflects None of the Factors this Court Associates with a Credible Threat of Prosecution.

"[T]he identification of a credible threat sufficient to satisfy the imminence requirement of injury in fact necessary depends on the particular circumstances at issue." *Vitagliano*, 71 F.4th at 138 (internal quotation marks omitted). To guide that context-specific inquiry, this Court has identified three relevant factors: past enforcement actions for the same conduct; threats of prosecution; and government behavior targeting particular plaintiffs or their behavior. None of those factors are present here. And Defendant knows of no case where this Court found a credible threat of enforcement absent at least one factor. *E.g. Hedges*, 724

_____

[5] The District Court also correctly ruled that the National Incident Based Reporting System data had no bearing on the credible threat that § 23-4-1(c) would be enforced because its reference to "weapon law violations" could have encompassed various offenses, including offenses not involving firearms. PA 222; *see also Pl. Ex.* 10; PA 190 (Tr. at 347-48).

F.3d at 201-202 (plaintiffs lacked pre-enforcement standing where they demonstrated none of these indicia); *see also Kearns v. Cuomo*, 981 F.3d 200, 210 and n.5 (2d Cir. 2020); *Adam*, 792 Fed. Appx. at 239; *Does v. Suffolk Cty.*, No. 21-1658, 2022 U.S. App. LEXIS 19094, at *8 (2d Cir. July 12, 2022).

First: There is no record of prior enforcement. "Past enforcement against the same conduct" can be considered "good evidence that the threat of enforcement is not chimerical." *Susan B. Anthony List*, 573 U.S. at 164 (internal quotation marks omitted); *Silva v. Farrish*, 47 F.4th 78, 87-88 (2d Cir. 2022); *Picard v. Magliano*, 42 F.4th 89, 100 (2d Cir. 2022); *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 385, 386 (2d Cir. 2015); *c.f. Kearns*, 981 F.3d at 210. But, as the District Court found, "there is no evidence in the record of any instance in which the law has ***ever*** been enforced," much less for Plaintiff's intended conduct. PA 222 (emphasis in original). Plaintiff introduced no evidence of any prior citations against anyone in the history of the rule.[6] He has never claimed any prior

---

[6] In arguing that the District Court abused its discretion in denying his motion for reconsideration, Plaintiff relies on data in Defendant's

27

enforcement against him—even though he carried his gun every time he entered Connecticut's parks, several times a week for many years, before the summer of 2022—or even that he has been asked to leave a park or forest. Nor does he know of anyone else against whom the rule was enforced. PA 162 (Tr. at 236, 238).

Second: Plaintiff introduced no evidence that "the prosecuting authorities have communicated a specific warning or threat to initiate proceedings" against him. *Thomas*, 220 F.3d at 1139; *see Steffel v. Thompson*, 415 U.S. 452, 459 (1974); *Knife Rights, Inc.*, 802 F.3d at 386; *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). Plaintiff admitted he has "never been threatened with enforcement" of § 23-4-1(c) by EnCon or any other police officer. PA 162 (Tr. at 236). He argues on appeal that his email exchange with DEEP's Deputy Commissioner

---

interrogatory responses listing the number of citations issued under § 23-4-1(c) each year from 2016 to 2022. *Pl. Br.* at 35. Plaintiff does not argue that those data may be considered in reviewing the merits of the District Court's standing decision. He never introduced the data into evidence, so they were not before the District Court. And, as explained below, the data would not alter the conclusion even if they were considered.

Trumble amounted to a threat of enforcement. *Pl. Br.* at 22-23. The District Court, however, found that the exchange contained no such threat, and that finding is not clearly erroneous. PA 221; *see Carter*, 822 F.3d 56-57 (factual findings are reviewed for clear error). Plaintiff e-mailed Trumble "to obtain clarity" about the meaning of § 23-4-1(c), and Trumble responded simply by referring Plaintiff to a resource that explained what the law is. A communication that "is nothing more than a restatement of the law . . . cannot plausibly constitute a threat of enforcement." *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 291 (D.C. Cir. 2022). And Plaintiff's testimony about this email exchange does not suggest that he interpreted it as a threat. PA 141-143 (Tr. at 154-164).

Finally: The regulation here did not target Plaintiff or his intended conduct. In *Vitagliano*, 71 F.4th at 139, the Court held that a plaintiff had alleged a credible threat of enforcement to challenge a law that criminalized sidewalk counseling outside clinics because the law was "newly enacted"; was "aimed specifically at Westchester County reproductive health care facilities"—where that plaintiff intended to counsel patients; and was "designed to curb the very conduct in which

29

[plaintiff] intends to engage . . . ." *Id.* Similarly, in *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 70 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2508 (2020), a law passed to prevent a particular airport from expanding the length of its runway established a credible threat of enforcement because "[t]he [law] directly targets [plaintiff] and prevents it from extending its runway."[7]

By contrast, the Controlled Substances Act ("CSA") at issue in *Adam*, 792 F. App'x at 23, did not give rise to a credible threat of prosecution. Distinguishing *Adam*, this Court explained in *Vitagliano* that the CSA is a "decades-old law with nationwide scope" and its general prohibition of marijuana was not particularized to that plaintiff's intended use of marijuana for religious purposes. *Vitagliano*, 71 F.4th at

---

[7] *See also Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988) (bookseller had standing to challenge law prohibiting commercial display of obscene material to minors because "the law is aimed directly at plaintiffs"); *Doe v. Bolton*, 410 U.S. 179, 188 (1973) (physician plaintiffs had standing to challenge law criminalizing abortion because "[t]he physician is the one against whom these criminal statutes directly operate"); *Illinois v. Gen. Elec. Co.*, 683 F.2d 206, 210 (7th Cir. 1982) ("as the Act has only one conceivable target . . . it is extremely unlikely that the state would overlook the violation"), *cert. denied*, 461 U.S. 913 (1983).

139 (distinguishing *Adam*); *see Navegar, Inc. v. United States*, 103 F.3d 994, 1000-1002 (D.C. Cir. 1997) (holding that gun manufacturers had standing to challenge statutory provisions that prohibited by name certain firearms that only they made, which "in effect single[d] out" plaintiffs as "intended targets," but lacked standing to challenge provisions describing prohibited firearms based on general characteristics).

Section 23-4-1(c) has none of the specific tailoring or targeting characteristics of the laws at issue in *Vitagliano* or *Tweed-New Haven Airport Auth.* With origins dating to 1918, it is not—as the District Court noted—newly enacted. PA 222; *see Def. Ex.* 133 (Glaser Dec.) at ¶ 41. Nor does § 23-4-1(c) target Plaintiff or any of the three specific locations he visits. Instead, the regulation applies generally to 142 parks and forests across the state and to all their millions of annual visitors. And Plaintiff introduced no evidence that § 23-4-1(c) was aimed at his specific conduct of carrying a concealed handgun for self-defense. Defendant, by contrast, presented evidence that the prohibition was originally designed, at least in part, to curb unauthorized hunting. *Id.* at ¶ 15 (explaining that early-

31

1900s "[r]eports and correspondence regarding Connecticut's state parks and forests . . . only refer to firearms in the context of hunting").

In the face of all this, Plaintiff tries to carry his burden by invoking the presumption that governments will enforce their laws absent a disavowal. *Pl. Br.* at 17-18; *see Vitagliano*, 71 F.4th 130. But that presumption alone cannot win the day. Government's willingness to enforce under some circumstances is a necessary, but not a sufficient, condition for a credible threat of prosecution.

In every prior case where this Court has applied the presumption, it has demanded one or more of the other key factors identified here— prior enforcement actions, specific threats, and/or targeting—before finding a credible threat of enforcement. *E.g. Silva*, 47 F.4th at 87-88 (prior enforcement actions); *Cayuga Nation*, 824 F.3d at 331 (threats); *Vitagliano*, 71 F.4th at 138 (law targeted plaintiff's conduct); *Tweed-New Haven Airport Auth.*, 930 F.3d at 70 (same). The presumption is therefore not sufficient on its own but may contribute to a credible threat of enforcement "[w]here . . . there is reason to believe that the plaintiffs

32

will be targets of [enforcement] . . . ." *Silva*, 47 F.4th at 88 (*quoting Cayuga Nation*, 824 F.3d at 331).

*Adam*, 792 F. App'x 20, illustrates this refusal to find standing based only on the general presumption of enforcement, and this Court should follow it. There, plaintiff sought to enjoin potential enforcement of the CSA against him because he wished to possess and use marijuana for religious purposes. The Court emphasized that the presumption "that the government will enforce its own laws . . . in and of itself, is not sufficient to confer standing, as courts also consider the extent of that enforcement in determining whether a credible threat of prosecution exists." *Id.* at 23 (collecting cases). Since Plaintiff had not "particularize[d] the CSA's enforcement in relation to" his intended conduct of possessing marijuana for religious reasons, he was "simply . . . at risk just like any other person in the country who might violate the CSA." *Id.* at 23. Any threat of enforcement against him was therefore "insufficiently imminent to confer Article III standing." *Id.*

The same is true here. If anything, the case for dismissal is even more compelling here than in *Adam* because the District Court decided

credible threat at the preliminary injunction stage, where Plaintiff bore a heightened burden of proving standing with specific facts and actual evidence, rather than at the pleading stage as in *Adam*.

### 3. Additional Facts Underscore that Plaintiff's Alleged Fear of Enforcement is Based on Speculation and Conjecture.

Plaintiff's failure to introduce specific facts establishing any of the credible threat factors is dispositive, and this Court should affirm on that basis alone. But the record also shows—based on Defendant's enforcement capacity and Plaintiff's inconspicuous behavior—that the risk of enforcement against Plaintiff is vanishingly low and depends on the sort of "highly attenuated chain of possibilities" that cannot establish an injury in fact. *Clapper*, 568 U.S. at 410.

Unlike in cases where state officials declare a "zero tolerance" policy of enforcement, *Christian v. Nigrelli*, 642 F. Supp. 3d 393, 401 (W.D.N.Y. 2022), appeal pending (No. 22-2987; argued on March 30, 2023), EnCon has a hands-off approach to enforcement. Officers go out of their way to take a non-confrontational approach with the public. PA 223; *see also* PA 178-79 (Tr. at 300-304). They do not search visitors for firearms upon

entry to a park and rarely intrude on patrons for any reason except in a few select locations to enforce hunting or alcohol-related restrictions. PA 223; *see also* PA 187 (Tr. at 336-37).

EnCon's hands-off approach further diminishes the likelihood of prosecution. Discovering Plaintiff's concealed firearm would require either investigation or some type of inadvertent disclosure, which has not occurred in Plaintiff's thirty years of carrying a hidden weapon he acknowledges is difficult to detect. PA 137-38 (Tr. at 140-41). And while Plaintiff argues that the risk of enforcement is heightened because members of the public can report seeing a firearm to EnCon, *Pl. Br.* at 24-25, Plaintiff testified that, to the best of his knowledge, his concealed handgun has gone unobserved by others while he is in public. PA 224 (*citing* Pl. Dep. Tr. at 142-43).

The likelihood of prosecution becomes even more attenuated once EnCon's limited enforcement capacity is added to the equation. EnCon cannot station officers or rangers at all 142 state parks and forests. PA 223; *see also* PA 166-67 (Tr. at 254-55); *Def. Ex.* 136 (Lewis Dec.) at ¶¶ 11-13. Instead, it carefully allocates its 52 full-time officers and seasonal

35

rangers based on season and activity. *Def. Ex.* 136 (Lewis Dec.) at ¶ 13. Plaintiff failed to establish or even ask whether the three locations Plaintiff visits are among the locations with greater police presence. But it would be reasonable to infer that they are not, since over the course of Plaintiff's thousands of visits to, for example, the Farmington Canal—he has gone four to five times per week for at least ten years—he has never encountered an EnCon officer. PA 139-40, 160 (Tr. at 148-49, 230).

Finally, although they can report firearm sightings, members of the public cannot enforce § 23-4-1(c). Only EnCon and other law enforcement can. "[T]he risk of enforcement is greater when private parties can enforce the law. . . . Inversely, the risk is lower when enforcement is 'restricted to state officials who are constrained by explicit guidelines or ethical obligations.'" *Nat'l Shooting Sports Found.*, 80 F.4th at 221 (*quoting Susan B. Anthony List*, 573 U.S. at 164) (citation omitted). EnCon is subject to the same legal and constitutional limitations as any law enforcement entity. So any "'eventual action'"—requiring an EnCon officer to discover a concealed firearm and then decide to cite the carrier for it—would "'reflect both legal and practical constraints, making any

36

prediction about future injury just that—a prediction.'"[8] *Id.* (*quoting Trump v. New York*, 141 S. Ct. 530, 536 (2020)).

> **4.   This Court Should Be Especially Reluctant to Allow Plaintiff's Pre-Enforcement Claim Because § 23-4-1(c) is Neither a Criminal Nor a Civil Punitive Law.**

The Supreme Court has only found pre-enforcement standing when a plaintiff shows a credible threat of criminal prosecution: "In [*Susan B. Anthony List*] and every pre-enforcement case that it recounted, the statutes at issue included criminal penalties." *Nat'l Shooting Sports Found.*, 80 F.4th at 222.   But §23-4-1(c) does not impose criminal penalties.   Violations are infractions, Conn. Gen. Stat. § 23-4(a); Conn. Agency Regs. § 23-4-5(b), and "[i]n Connecticut . . . an infraction is not a

---

[8] Plaintiff argues that Defendant's "mighty effort to defend this case" on the merits at the preliminary injunction stage "shows that [the State] ha[s] every intent" to enforce § 23-4-1(c). *Pl. Br.* at 21 n.7. But the Office of the Attorney General's fulfilling its statutory duty to defend a state statute or regulation is not evidence of an Article III injury in fact, especially since Plaintiff's own lawsuit prompted the defense. *See Nat'l Shooting Sports Found.*, 80 F.4th at 221-22 ("[W]e hesitate to infer the Attorney General's enforcement priorities from his zealous defense of a duly enacted state law," particularly where plaintiff was "the one who sued the state and . . provoke[d] the Attorney General's response"); *see also Clapper*, 568 U.S. at 416 (rejecting proposition that self-inflicted harm satisfies Article III).

crime." *Miller v. Dep't of Agric.*, 168 Conn. App. 255, 270, *cert. denied*, 323 Conn. 936 (2016); *see* Conn. Gen. Stat. § 53a-24(a) (defining "crime" as including felonies and misdemeanors). The penalties are not severe: a fine of $35 and eviction from parks and forests for a day and potentially up to one year. Conn. Gen. Stat. § 23-4(a); Conn. Agency Regs. § 23-4-5(a) and (b). And if Plaintiff were cited under § 23-4-1(c), he could raise his Second Amendment challenge as an affirmative defense. *See* Conn. Gen. Stat. § 51-164n(d) and (h) (providing that individuals charged with infractions may elect trial, at which point "the practice, procedure, rules of evidence and burden of proof applicable in criminal proceedings shall apply").

This Court should therefore be especially wary of Plaintiff's rush to court, as he would have the prerogative to raise constitutionality as an affirmative defense without risking criminal consequences. As the Third Circuit recently explained, "civil penalties lower the temperature," and "when the 'ripeness question is otherwise close, the distinction between criminal and civil sanctions might tip the balance.'" *Id.* at 222-23 (internal quotation marks omitted).

Nor is § 23-4-1(c) the sort of "civil punitive" law that this Court has treated similarly to criminal laws. The Court observed in *Vermont Right to Life Committee v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000), that the distinction between criminal and civil penalties was "of no moment" regarding a statute that imposed "a civil penalty of up to $10,000 for each infraction," because "[t]hat penalty's deterrence of [plaintiff's] speech is palpable enough." That is a far cry from § 23-4-1(c), which carries only a minuscule fine of $35 and a potential temporary eviction.

Plaintiff must therefore show more to establish pre-enforcement standing in this case than if he were challenging a criminal or civil punitive law. *See Bank v. United States Dep't of the Treasury*, No. 19-3977, 2021 U.S. App. LEXIS 32358, at *4 (2d Cir. Oct. 29, 2021) (summary order) ("a 'more permissive' standard" applies when the threat is of "enforcement of 'criminal or civil punitive statutes'") (*quoting Hedges*, 724 F.3d at 196). Although Plaintiff failed to meet his burden under any standard, the non-punitive nature of § 23-4-1(c) should "tip the balance" even further in favor of affirming the District Court. *Nat'l Shooting Sports Found.*, 80 F.4th at 222.

39

### C. The First Amendment "Chilling" Doctrine Does Not Relieve Plaintiff of his Burden to Show a Credible Threat of Enforcement.

As an "[a]lternative[]" argument, Plaintiff asks this Court to apply the First Amendment "chilling" doctrine, which Plaintiff mistakenly thinks would lighten his burden of proof. *Pl. Br.* at 26. Even if the chilling doctrine applied in the Second Amendment context, Plaintiff would still have to show a credible threat of enforcement just like in any other pre-enforcement challenge. As the Supreme Court recently emphasized: "[T]he chilling effect associated with a potentially unconstitutional law being on the books is insufficient to justify federal intervention in a pre-enforcement suit." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 538 (2021) (internal quotation marks omitted). That is true "whether the challenged law in question is said to chill the free exercise of religion, the freedom of speech, the right to bear arms, or any other right." *Id*.

Under the chilling doctrine, plaintiffs may establish standing by showing either (1) an intent to engage in conduct prohibited by the law, and a credible threat of enforcement, or (2) that the law has a chilling

40

effect on their speech that is objectively reasonable, and that they self-censor as a result. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020); *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1292 (2019). The problem for Plaintiff is that "both [theories] hinge on the existence of a credible threat that the law will be enforced." *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996). The "two showings have some degree of overlap," and under "[e]ither" theory, "a credible threat of enforcement is critical; without one, a putative plaintiff can establish neither . . . ." *Speech First, Inc.*, 968 F.3d at 639 n. 1 (*quoting Abbott*, 900 F.3d at 176).

Binding precedent from this Court and the Supreme Court reinforces that point. In *Susan B. Anthony List*, plaintiffs alleged that their "speech . . . had been chilled" by the law at issue and likely would be chilled again. 573 U.S. at 155. Yet the Supreme Court concluded that plaintiff had standing only after thoroughly analyzing whether they "have alleged a credible threat of enforcement." *Id.* at 161. And in *Vitagliano*, plaintiff still had to plead a credible threat of enforcement even though she alleged she would engage in sidewalk counseling "but

41

for" the law prohibiting that conduct. 71 F.4th at 136-37; *see also Picard*, 42 F.4th at 97-101 (requiring plaintiff to establish credible threat of enforcement despite alleging that "[a]bsent his fear" of prosecution "he could continue to promote jury nullification"); *Silva*, 47 F.4th at 87 (applying requirement to plaintiffs who alleged they were "deterred and chilled" from fishing by challenged laws).

The operative framework in this Circuit for pre-enforcement challenges is the three-factor test recently set forth in *Vitagliano*, 71 F.4th at 136. The Court has applied that standard to claims based on chilled speech or conduct, and should apply it here. *E.g. Vitagliano*, 71 F.4th at 136-37; *Picard*, 42 F.4th at 97-101; *Silva*, 47 F.4th at 87. To be sure, that standard does account for the chilling or deterrent effect that laws can have, but it does so as part of the first element—requiring an intention to engage in constitutionally affected conduct. That requirement is satisfied if plaintiff would engage in the prohibited conduct but for the law. *Vitagliano*, 71 F.4th at 137 (collecting cases). But that has nothing to do with the credible threat of enforcement

42

requirement—a distinct element of pre-enforcement standing that must be independently established.

Lastly, even if Plaintiff's argument were not foreclosed by binding precedent, this Court should not import First Amendment standing doctrine into this Second Amendment case. Plaintiff concedes "he could not locate a case" where another court applied the chilling doctrine outside the First Amendment. *Id.* at 28. That is unsurprising. Standing based on a law's alleged chilling effect—a claim that derives from the overbreadth doctrine—is limited to claims asserting First Amendment violations. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 168 (1972); *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 834 (6th Cir.), *cert. denied*, 534 U.S. 955 (2001); *Ollie v. Univ. of Connecticut*, 364 F. Supp. 3d 143 (D. Conn. 2019), appeal terminated No. 19-526 (March 28, 2019); *see also United States v. Chester*, 628 F.3d 673, 688 (4th Cir. 2010) (*Davis, J.*, concurring) ("importing the overbreadth doctrine, an 'extraordinary' exception to prudential standing requirements . . . into the Second Amendment context would be inappropriate") (citation omitted), *overruled in part on other grounds by Bruen*, 142 S. Ct. at 2127. Courts

43

have rejected assertions that a law's purported chilling effect on Second Amendment rights constitutes sufficient injury-in-fact to confer standing. *See, e.g.*, *Robinson v. Sessions*, 721 F. App'x 20, 23 n.2 (2d Cir.) (Summary Order), *cert. denied*, 138 S. Ct. 2584 (2018); *Zentmyer v. United States*, 2022 WL 959806, 2022 U.S. Dist. LEXIS 59235, at *9 (S.D. Cal. Mar. 30, 2022) (citing *San Diego Cnty. Gun Rts. Committee v. Reno*, 98 F.3d 1121, 1129 (9th Cir. 1996)); *Firearm Owners Against Crime v. City of Harrisburg*, 2016 WL 1162283, 2016 U.S. Dist. Lexis 38878, at *25 (M.D. Pa. March 24, 2016). Plaintiff cannot circumvent his burden of establishing a credible threat of enforcement by claiming that § 23-4-1(c) chills his conduct.

## D. Plaintiff Was Not Denied Notice or an Opportunity to be Heard.

Plaintiff contends that the District Court improperly raised the credible threat of enforcement issue sua sponte. *Pl. Br.* at 12-15. That is inaccurate. As detailed below, Defendant challenged standing, and the District Court gave Plaintiff multiple opportunities to respond with briefing, evidence, and argument.

44

But Plaintiff would be wrong to protest even if the District Court had raised the credible threat issue sua sponte. Standing implicates subject matter jurisdiction and may be raised sua sponte. *Carter*, 822 F.3d at 57. And Plaintiff bore the burden of establishing "[e]ach element" of standing "in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *Susan B. Anthony List*, 573 U.S. at 158 (quotation marks omitted). So Plaintiff had to prove a credible threat of enforcement at the preliminary injunction stage of litigation even if Defendant had not disputed it. His failure to do so requires dismissal.

Plaintiff relies on the principle that "'[a] district court should not dismiss an action pending before it without first providing the adversely affected party with notice and an opportunity to be heard.'" *Pl. Br.* at 13 (*quoting McGinty v. New York*, 251 F.3d 84, 90 (2d. Cir. 2001)). In *McGinty*, the district court had "dismissed the case without informing plaintiffs it was contemplating such action." *Id.* at 90.

This case is just the opposite. At a status conference on January 17, 2023, Defendant notified Plaintiff of a potential standing problem and the Court allowed Plaintiff to amend his pleadings. PA 213-14; ECF Nos.

45

12 and 15. Defendant then moved to dismiss the Amended Complaint for lack of standing, and Plaintiff opposed. As the District Court noted, "Defendant's motion to dismiss put Plaintiff on notice that she was challenging . . . his pre-enforcement standing . . . ." PA 259. Defendant argued, for instance, that Plaintiff had not faced actual or threatened enforcement under § 23-4-1(c), and that he had "not met [his] burden" of pleading that "[t]he threat of future enforcement [is] 'sufficiently imminent.'" PA 96-97 (*quoting Susan B. Anthony List*, 573 U.S. at 159). Plaintiff acknowledged in his opposition that he had to establish an intention to engage in conduct proscribed by the law and that "there exists a credible threat of prosecution thereunder." ECF No. 27 at 5. And in her reply, Defendant reemphasized the need for Plaintiff to demonstrate a credible threat of enforcement by arguing that Plaintiff could not "establish a concrete intent or a credible threat of prosecution." ECF No. 33 at 6.

Apart from those filings, "[t]he record demonstrates that Plaintiff recognized the need to show a credible threat of enforcement." PA 259. Prior to the hearing, the District Court repeatedly reminded Plaintiff

that standing was disputed. "The Court informed the parties in advance [of the hearing] via email that it would be hearing argument on the issue of standing . . . ." PA 255-56. The Court opened the hearing by reminding counsel that "standing is jurisdictional and therefore required to be established." PA 105 (Tr. at 10). The parties acknowledged they understood that the Court wanted standing addressed. *E.g.* PA 134 (Tr. at 127-28). Plaintiff then had an opportunity to examine witnesses and present oral argument on standing. PA 260.

That is more than enough to satisfy the notice and opportunity to be heard requirements emphasized in *McGinty*. If Plaintiff failed to make a record on credible threat of enforcement, he cannot pass the blame to Defendant or the District Court. This Court should affirm.

47

## II.   THE DISTRICT COURT PROPERLY DENIED PLAINTIFF'S MOTION FOR RECONSIDERATION, WHICH SOUGHT TO INTRODUCE DATA THAT PLAINTIFF HAD AVAILABLE AT THE HEARING.[9]

"Granting a motion for reconsideration is justified only where the movant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *United States v. Brown*, No. 21-122, 2021 U.S. App. LEXIS 36638, at *2 (2d Cir. Dec. 13, 2021) (summary order) (*quoting Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). The standard for granting such motions is "strict." D. Conn. Loc. R. 7(c). They are not "vehicle[s] for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quotation marks omitted). Reconsideration is an "extraordinary remedy" that is "employed sparingly in the interests of finality and consideration of

---

[9] Denials of motions for reconsideration are reviewed for abuse of discretion. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 435 (2d Cir. 2011).

scarce judicial resources." *Butto v. Collecto Inc.*, 845 F. Supp. 2d 491, 494 (E.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff claims that the District Court abused its discretion in declining to grant reconsideration to correct "manifest injustice." *Pl. Br.* at 30. As support for this claim, however, Plaintiff simply repeats his argument that the District Court deprived him of due process by raising the issue of credible threat sua sponte without allowing him to be heard. *Compare Pl. Br.* at 12-15, *with id.* at 31-35. As already explained, those arguments are meritless.

Nor was the District Court under any obligation to consider the data on prior instances of enforcement that Plaintiff tried to introduce through his motion for reconsideration. That data first surfaced in Defendant's response to Plaintiff's Interrogatory 18, which asked "how many times the DEEP has arrested or cited someone for a violation of . . . § 23-4-1(c) since January 1, 2013." PA 241. Defendant responded by listing the raw number of "citations" for each year from 2016 through 2022. PA 242.

As the District Court ruled, this data could not be the basis for reconsideration or "manifest injustice" because it was available to Plaintiff before the hearing; Plaintiff simply failed to introduce it into evidence. PA 260. The Court instead ruled that Plaintiff "had evidence that he may have strategically determined was not necessary, and . . . now regrets his choice." *Id.* Allowing Plaintiff to relitigate standing after an unfavorable decision would have been "exactly the sort of 'second bite at the apple' that makes reconsideration inappropriate." *Id.*; *c.f. Sloan v. United Techs. Corp.*, 596 Fed. Appx. 35, 36 n.2 (2d Cir. 2015) (summary order) (attorney's failure to include evidence in record was not an "extraordinary circumstance" warranting reconsideration).

Plaintiff's claim that the District Court abused its discretion in refusing to consider the data is especially weak because the data would not have made a difference in the outcome. As explained above, prior enforcement actions carry little weight unless they were for conduct that is same or similar to the conduct Plaintiff intends to engage in. *Susan B. Anthony List*, 573 U.S. at 164; *Bronson*, 500 F.3d at 1108; *Adam*, 792 Fed. Appx. at 23. Here, the data merely lists the number of citations issued

under § 23-4-1(c) between 2016 and 2022. It provides no information about the circumstances of those citations or whether they were for conduct similar to Plaintiff's intended conduct of carrying a concealed handgun for self-defense. So without additional discovery and additional fact-finding, the data would have little bearing on a credible threat analysis. The District Court was well within its discretion in declining to reconsider its decision based on the data. *C.f. Analytical Surveys, Inc.*, 684 F.3d at 52 (courts refuse to consider arguments raised for first time in motion for reconsideration unless argument "is purely legal and there is no need for additional fact finding") (internal quotation marks omitted).

## CONCLUSION

This Court should affirm the District Court's judgment.

Respectfully submitted,
KATIE DYKES

WILLIAM TONG
ATTORNEY GENERAL

By: /s/ Timothy J. Holzman
Timothy J. Holzman
Thadius L. Bochain
Blake T. Sullivan

51

Assistant Attorneys General
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5020
Fax: (860) 808-5347
Email: Timothy.Holzman@ct.gov

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

As required by Federal Rule of Appellate Procedure (FRAP) 32(g)(1), I hereby certify that this brief complies with the type-volume limitations of FRAP 32(a)(7)(B), as modified by Second Circuit Local Rule 32.1(a)(4), in that this brief contains 9391 words, excluding the parts of the brief exempted by FRAP 32(f). I further certify that this brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32 (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Century Schoolbook font.

/s/ Timothy J. Holzman
Timothy J. Holzman
Assistant Attorney General

Dated: November 30, 2023

53

## CERTIFICATION OF SERVICE

I hereby certify that on this 30 day of November, 2023, I caused the foregoing brief to be filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Timothy J. Holzman
Timothy J. Holzman
Assistant Attorney General